Elaine DEATON, et al., Plaintiffs–
Appellants,

v.

MONTGOMERY COUNTY, OHIO,
et al., Defendants–Appellees.

No. 92–3302.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 12, 1992.

Decided April 1, 1993.

Thomas W. Condit (argued and briefed), Condit & Dressing, Cincinnati, OH, for plaintiffs-appellants.

Victor T. Whisman (argued and briefed), Christopher Van Schaik, Frances Elaine McGee–Cromartie, Office of the Pros. Atty., Dayton, OH, for defendants-appellees.

Before: BOGGS and SILER, Circuit Judges; and LAMBROS, Chief District Judge.[*]

LAMBROS, Chief District Judge.

This case requires this court to determine whether a county, which contracts with a municipality to manage and operate its jail facilities and temporarily house county prisoners, may be held liable under 42 U.S.C. § 1983 for constitutional deprivations resulting from custom, policy or practice of the municipality. Furthermore, we must determine whether a county ratified the unconstitutional conduct of a municipality, to which care of county prisoners has been delegated, if the county knew or should have known of such conduct but failed to take steps to protect its prisoners temporarily housed in a facility operated by the municipality.

Plaintiffs appeal from an order denying their motion for summary judgment on the

---

[*] The Honorable Thomas D. Lambros, Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation.

issue of liability and granting defendants' motion for summary judgment. Contrary to plaintiffs' contention that defendants were deliberately indifferent to plaintiffs' rights and safety when: 1) defendants failed to ensure that proper procedures would be followed by the staff at the Dayton Human Rehabilitation Center, and 2) defendants failed to take any action after learning of the strip searches, the district court held that the County may assume that the Municipality operates the facility in accordance with state law and such an assumption does not amount to deliberate indifference. In addition, the district court held that even if the defendants demonstrated deliberate indifference by failing to act after learning that plaintiffs had been strip searched, this indifference would be the proximate cause of injury to subsequent prisoners, not these plaintiffs.

I

There is little dispute with regard to the facts in this case. On January 13, 1987, the Board of County Commissioners of Montgomery County (hereinafter the County) entered into a lease agreement with the City of Dayton (hereinafter the City) whereby the County would construct and maintain a regional Female Misdemeanant Facility located at the City's Human Rehabilitation Center, and upon completion, the City agreed to manage and operate the facility. The purpose of this agreement was to alleviate overcrowding at the County Jail. The agreement further provided that:

[t]he City shall hold County free and harmless from any and all liability arising from City's operation of the Regional Female Facility. County shall hold City free and harmless from any and all liability arising from the ownership of the Regional Female Facility and for the construction of same.

On March 24, 1989, the plaintiffs were arrested in Kettering, Ohio and charged

with criminal trespassing for blocking the entrance of an abortion clinic. The plaintiffs were held in Kettering for several hours until they were transported to Montgomery County Jail. The plaintiffs were never booked, housed or otherwise incarcerated while at the County Jail; they were, however, informed that they were being charged with contempt of court for violating an anti-picketing injunction issued by Montgomery County Common Pleas Judge John Meagher.

Because of overcrowding at the County facility, plaintiffs were transported to the Female Misdemeanant Facility at the Dayton Human Rehabilitation Center (hereinafter DHRC). The plaintiffs were held at DHRC for six to eleven days. While incarcerated at the facility, plaintiffs were subjected to at least one strip and/or visual body cavity search by DHRC staff even though the plaintiffs' conduct was not threatening and the DHRC staff had no reason to suspect that they were a threat to security or that they were carrying contraband. The searches were conducted by City employees without participation from any agent of the County.

Prior to the filing of plaintiffs' suit, Sheriff Haines of the Montgomery County jail never heard of illegal searches being conducted at DHRC and assumed that the Center was in compliance with Ohio law regarding strip and visual body cavity searches.

On March 22, 1991, plaintiffs filed suit against Montgomery County, Sheriff Gary Haines, individually and as sheriff, the Board of County Commissioners of Montgomery County and ten Jane Does, individually and as Montgomery County jail employees,[1] alleging violation of Ohio Revised Code § 2933.32 and violation of plaintiffs' Fourth Amendment rights giving rise to liability under 42 U.S.C. § 1983. Defendants filed an answer on May 13, 1991, followed by a motion for summary judg-

1. The ten Jane Does were thought to be jail employees of Montgomery County. However, in the County Commissioners' answer, plaintiffs were told that they were held at DHRC, and it was city employees who conducted the strip searches. Plaintiffs never amended their complaint to include DHRC, the City of Dayton or the employees of the City who conducted the strip searches.

ment filed on July 16, 1991. On January 28, 1992, the district court granted defendants' motion for summary judgment, denied plaintiffs' motion for summary judgment and dismissed the state law claims without prejudice.

## II

■ Upon review, this court of appeals is to apply the same test in passing upon an award of summary judgment as that utilized by the trial court to grant the motion. *Glenway Industries Inc. v. Wheelabrator–Frye Inc.*, 686 F.2d 415, 417 (6th Cir.1982) (citing *Howard v. Russell Stover Candies, Inc.*, 649 F.2d 620 (8th Cir.1981)). In other words, summary judgments are reviewed *de novo* on appeal. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir.1988).

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment where:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*See also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

When presented with a summary judgment motion, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962)); *see also*

*Gutierrez v. Lynch*, 826 F.2d 1534 (6th Cir.1987). On summary judgment, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The Court must turn to the substantive law in determining which facts are material. *Id.*

## III

The Ohio Revised Code imposes a duty on counties to maintain jail facilities. Section 307.01(A) states in pertinent part: "[a] ... jail ... shall be provided by the board of county commissioners when, in its judgment, [one is] needed." Furthermore, the county may enter into an agreement with a municipal corporation to carry out the duty arising under O.R.C. § 307.01(A). Ohio Revised Code § 307.15 states:

> [t]he board of county commissioners may enter into an agreement with the legislative authority of any municipal corporation, ... whereby the legislative authority of any municipal corporation undertakes, and is authorized by the board, to exercise any power, perform any function, or render any service, in behalf of the county or the board, which the county or the board may exercise, perform, or render.

A city, like the board of commissioners, is permitted to establish, erect, maintain and regulate jails pursuant to O.R.C. § 715.16.

## IV

Both governmental entities, the County and the City, are permitted to maintain jail facilities, and each entity is permitted, under Ohio law, to enter into agreements with each other concerning the maintenance of such facilities. In 1987, Montgomery County and the City of Dayton entered into such an agreement and pursuant to that agreement, the County erected the facility and maintained the physical plant and the City managed and operated the facility. There is no question the County was in accordance with Ohio law and the agreement between the two governmental entities is valid.

888

■ Plaintiffs argued that the agreement did not require the City to be in compliance with state law. We think it is irrelevant that the agreement between the County and the City did not set forth any standards for the City to follow in maintaining and operating the facility because the City's standards for operation are, to some extent, governed by Ohio law and, specifically, the standard for body cavity and strip searches as set forth in O.R.C. § 2933.32 governs the City's procedures. This statute prohibits these type of searches save for legitimate medical or hygienic reasons or where probable cause to do so exists.

The City and County are both required to comply with this statute regardless of whether any agreement provides for compliance. It seems logical to us that one may assume that a governmental entity, housing prisoners, is in compliance with state law.

V

■ While plaintiffs rely heavily on the Eleventh Circuit case of *Ancata v. Prison Health Services Inc.*, 769 F.2d 700 (11th Cir.1984), where the court held the County cannot absolve itself from liability for Constitutional violations against prisoners by contracting away, with private entities, the duty owed to the prisoners, we distinguish this case from the instant case.

In *Ancata*, plaintiff, personal representative of the estate of the deceased, brought suit pursuant to 42 U.S.C. § 1983 against the county, the sheriff and the Prison Health Services.[2] Plaintiff alleged cruel and unusual punishment based on deliberate indifference to the prisoner's medical needs. The district court dismissed all claims against all defendants. On appeal, the Eleventh Circuit held that state and local governments have an obligation to provide medical care to incarcerated individuals and this duty is not absolved by contracting with a private entity. Even though the private entity contracted with the county to perform an obligation of the county, the county itself remains liable for

the policies and customs of the private entity.

In *Ancata*, the duty was delegated to a private entity and the liability ultimately remained with the county, not under a notion of *respondeat superior*, but because the policy of the entity became the policy of the county by default. In the instant case, we are not dealing with a private entity. Rather, we have another governmental entity with its own statutory authority to house prisoners, and this separate entity is bound by the same statute as the County with regard to strip and visual body cavity searches. The duty to manage and operate the facility belongs to the City and the custom or policy it chooses to implement does not become that of the County because the City has separate statutory authority to house prisoners. Therefore, any constitutional violations of the plaintiffs' rights were the result of City, not County, policy.

Plaintiffs filed notice of supplemental authority with the court on November 10, 1992. In that notice, plaintiffs cite *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961) which states:

... no State may effectively abdicate its responsibilities by either ignoring them or by merely failing to discharge them whatever the motive.... By its inaction, the Authority, and through it the State, has not only made itself a party ..., but has elected to place its power, property and prestige behind the admitted discrimination. The State has so far insinuated itself into a position of interdependence with Eagle that it must be recognized as a joint participant....

The court however went on to say that:

[b]ecause readily applicable formulae may not be fashioned, the conclusions drawn from the facts and circumstances of this record are by no means declared as universal truths on the basis of which every state leasing agreement is to be tested.

2. Prison Health Services was the entity responsible for providing medical care to inmates.

■ This court notes the distinction between this case and the instant case. The *Burton* case deals with a private/governmental entity relationship and the case before us involves two separate governmental entities. The interdependence in this instance does not make the County a joint participant since each governmental entity is required to be in compliance with Ohio law. Moreover, because each entity is required to be in compliance with Ohio law, we do not believe the County adopts the City's policy by default absent a showing of deliberate indifference.

## VI

42 U.S.C. § 1983 states in part:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ In order for the plaintiffs to prevail on this § 1983 claim, they must show deliberate indifference on the part of the County and/or the County Sheriff. We find the district court properly applied the deliberate indifference standard. In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) the Court held:

[section] 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.

In analyzing the specific language in § 1983, the court in *Monell* concluded that the language plainly imposes liability on a governmental entity that, under the color of some official policy, "causes" an employee to violate another's constitutional rights. *Id.* at 692, 98 S.Ct. at 2036. Congress did not intend § 1983 liability to attach where causation is absent.

With respect to the issue of causation, the court in *Molton v. City of Cleveland*, 839 F.2d 240, 246 (6th Cir.1988), *cert. denied*, 489 U.S. 1068, 109 S.Ct. 1345, 103 L.Ed.2d 814 (1989), noted that the plaintiff never adduced evidence of a definitive city policy, custom, or usage which was an affirmative link, the moving force that animated the behavior—the acts of commission or omission—of the police officers that resulted in the constitutional violations alleged.

While petitioner in the instant case need not supply the quantum of proof required of the plaintiff in *Molton*, plaintiffs must present enough evidence to survive defendants' motion for summary judgment. Plaintiffs do not meet their burden of showing that a material issue of fact exists. In other words, plaintiffs did not show that there was a genuine issue of material fact with regard to any deliberate indifference on the part of the County or the Sheriff. There is no assertion that the County or its agents caused the constitutional violation or that the policy of transporting prisoners to DHRC was the moving force that "animated the behavior."

Plaintiffs cannot simply assert that there was deliberate indifference because the agreement between the City and County did not require the City to follow proper jail procedures. As we stated above, the City was required to follow proper jail procedures under Ohio law. It is, therefore, irrelevant that the agreement between these two governmental entities was void of such requirement.

We do not believe that the Sheriff of Montgomery County has an affirmative duty to discover whether the city is following state law. There are no facts presented indicating that the sheriff knew or should have known that strip searches

were conducted in violation of state law. In other cases where deliberate indifference has been found, the county was held liable for its own action or inaction, or that of a private entity. The instant case deals with another governmental entity governed by the same laws as the County. The City has independent statutory authority to house prisoners and in doing so was required to comply with Ohio law. It is for this reason that we find that Montgomery County is not liable.

No evidence was presented which would allow us to conclude that the Sheriff knew of the strip searches prior to the filing of this suit in district court. When plaintiffs filed suit against defendants, defendants were then on notice that the City may not be in compliance with state law and any inaction by the County after this point might make a case for deliberate indifference giving rise to a claim under § 1983, assuming of course those subsequent prisoners were subjected to illegal strip searches. In other words, these plaintiffs are not the proper party to bring suit since there was no showing of deliberate indifference toward them on the part of the County.

## VII

For the reasons stated above and upon *de novo* review of this case, we affirm the district court's decision.

BOGGS, Circuit Judge, concurring.

As the court correctly points out, Montgomery County cannot be not liable, *under the facts of this case*, for availing itself of the opportunity in Ohio law to contract for shared jail space.

This opinion does not enable authorities to slough off their responsibility or perform a "shell game" with the legal ownership of prisons. Montgomery County certainly could be held liable to the extent that it had knowledge about or direction of the policies being carried out by the city under its contract, or to the extent that it was deliberately indifferent to what those policies were.

In this particular case, it is unfortunate that counsel for the plaintiffs did not properly investigate the legal identity of the actors who performed the strip searches, and apparently did not file suit until two days before the expiration of two years from the incident. Plaintiffs were thus apparently unable to take advantage of the information that was presented in Montgomery County's answer. However, poor lawyering cannot create liability on behalf of an entity, Montgomery County, that did not violate its duties under 42 U.S.C. § 1983. I therefore concur in the court's opinion.