23 F.3d 407
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Dr. and Mrs. Wentworth S. MORRIS, and Mary Mauricia Morris,
Plaintiffs-Appellants,
v.
MONTGOMERY COUNTY, TENNESSEE, et al., Defendants-Appellees.
 No. 93-5377.
 United States Court of Appeals, Sixth Circuit.
 April 20, 1994.
 
 Before: NELSON and SILER, Circuit Judges, and HACKETT, District Judge.*
 PER CURIAM.
 
 
 1
 This is a civil rights action in which the plaintiffs, Mary Mauricia Morris and her parents, assert a variety of claims arising out of Ms. Morris' arrest and institutionalization. The district court granted summary judgment to the defendants on the federal claims, largely on statute of limitations grounds, and dismissed the plaintiffs' pendent state law claims without prejudice. Upon de novo review we conclude that the district court's disposition of the case was correct in all respects.
 
 
 2
 * In the early evening of August 20, 1990, a neighbor of the plaintiffs telephoned the police department in Clarksville, Tennessee, to report that Mary Mauricia Morris had fired a handgun at two passersby. Two Clarksville police officers were dispatched to the plaintiffs' address. The caller, Larry Ross, met them there and said that he had heard gunshots coming from the Morris residence. Two youngsters who were with Mr. Ross said that they had heard the shots too. Mr. Ross told the officers that Ms. Morris always carried at least one handgun, and that she often wore loose clothing under which she would conceal weapons.
 
 
 3
 At the conclusion of the conversation with Mr. Ross the officers walked up the driveway toward the Morris residence. There they saw Ms. Morris, who had a pair of ear protectors around her neck and was tucking something into the waistband of her trousers. Ms. Morris volunteered that she had been firing a weapon, but said that she had been acting in "self-defense."
 
 
 4
 Upon hearing this admission, the officers decided to arrest Ms. Morris for reckless endangerment and unlawful possession of a weapon. As they started to make the arrest, Ms. Morris moved her hand toward her waistband. The officers seized Ms. Morris by the arms, placed her against their patrol car, and patted her down for weapons. The patdown revealed three loaded pistols, one of which was in the pocket toward which Ms. Morris had moved her hand.
 
 
 5
 Ms. Morris was taken to the Montgomery County Jail, where a more thorough search of her person was conducted. This search or the prior one (we are not sure which) disclosed a number of rounds of live ammunition. After 62 minutes at the jail, during which time Ms. Morris was booked, her mother procured her release on bond.
 
 
 6
 At the preliminary hearing held before a state judicial officer on August 23, 1990, the district attorney moved for a psychiatric evaluation. Ms. Morris' counsel concurred, and the judge ordered Ms. Morris to undergo an evaluation at a mental health clinic in Clarksville. An initial evaluation was conducted at the clinic that day. On the following day, a physician and a psychologist at the clinic recommended to the judge that Ms. Morris be referred to the Middle Tennessee Mental Health Institute in Nashville for further testing. A copy of the recommendation was sent both to the district attorney and to Ms. Morris' counsel.
 
 
 7
 The judge promptly ordered a transfer, and Ms. Morris was transported to the Institute by two Montgomery County deputy sheriffs. The Institute admitted Ms. Morris on August 24, 1990.
 
 
 8
 On September 13, 1990, the state judge entered an order providing that Ms. Morris was to be confined at the Institute a maximum of thirty days for testing. On October 22 Ms. Morris' attorney advised the judge that the Institute had "found it necessary to extend the normal thirty-day period for the evaluation in this case. A certain date for the completion of the forensic [examination] has not been established."
 
 
 9
 On October 29 the director of Institute's forensic services department reported to the judge on Ms. Morris' ability to stand trial and on her mental condition at the time of her alleged offense. "After completion of the competency evaluation," the report said, "the staff of Middle Tennessee Mental Health Institute has determined that Ms. Morris' condition is such that she is capable of adequately defending herself in a court of law." But "[w]ith regard to Ms. Morris' mental condition at the time of the alleged offense," the report continued, "it is the recommendation of the staff that she does meet the criteria for an insanity defense." The report said that Ms. Morris had been released, the staff having determined that "Ms. Morris does not meet the standards for judicial commitment to a mental health institute" under the Tennessee statutes authorizing involuntary commitment.
 
 
 10
 On November 30, 1990, the judge entered an order stating that the charges against Ms. Morris had been settled. Ms. Morris agreed to continue counseling, and further agreed that she would not engage in criminal conduct during the next year. The order provided that the charges against Ms. Morris would be dismissed upon her fulfillment of the agreement.
 
 II
 
 11
 On August 26, 1991, Ms. Morris and her parents filed a complaint in federal district court against Montgomery County, the City of Clarksville, the sheriff of Montgomery County, and the chief of police of Clarksville. The complaint asserted a federal constitutional claim under 42 U.S.C. Sec. 1983 and also asserted several state law causes of action. Amended complaints were subsequently filed adding additional defendants.
 
 
 12
 The final amended complaint alleged that the defendants had violated Ms. Morris' civil rights by arresting her illegally and without probable cause and by using excessive force. The complaint further alleged that the arresting officers had violated Ms. Morris' rights under the Second Amendment, and that an alleged failure to protect the Morrises' home against burglary in the past represented deliberate indifference to the plaintiffs' civil rights. (The Morrises claimed that their home had been burglarized--and that they had been threatened or assaulted by the burglars--on several occasions during the years 1988 to 1991.) Additionally, the plaintiffs asserted that the sheriff and his deputies had deprived Ms. Morris of liberty without due process of law by confining her at the Institute illegally. The plaintiffs also claimed that the city and county had violated their civil rights by failing adequately to train their officers and deputies.
 
 
 13
 The pendent state claims included claims for false arrest, false imprisonment, sexual harassment, abuse of process, malicious prosecution, and intentional infliction of emotional distress. Ms. Morris' parents also asserted claims for loss of the companionship, society, and services of their daughter during the time of her confinement in the Institute.
 
 
 14
 Anticipating a statute of limitations defense, the plaintiffs alleged that the running of the statute had been tolled on various grounds. First, they asserted that the City of Clarksville had fraudulently concealed various police, medical, and legal records pertaining to Ms. Morris. As a result, the plaintiffs claimed, they did not discover that their rights had been violated until August of 1991. Second, the plaintiffs argued that the statute of limitations did not begin to run on their malicious prosecution claim until December 5, 1991, the date on which a "favorable termination of plaintiff Mary M. Morris' " criminal proceeding occurred. Finally, the complaint stated that
 
 
 15
 "the Defendants have alleged that at the time of the accrual of this cause of action, plaintiff Mary Mauricia Morris was under the temporary disability of insanity, which continued, they allege, during her period of incarceration at [the Institute]. If this be true, the statute of limitations would be tolled during such period of disability (8-20-90 thru 10-25-90). Plaintiffs aver that the defendants are hereby estopped to plead the expiration of this cause of action. Plaintiffs incorporate herein by reference Plaintiffs' Affidavit Exhibit A previously filed with the Court."
 
 
 16
 The affidavit to which the complaint referred was a joint affidavit by all three plaintiffs claiming that the police and sheriff's department had withheld relevant records from them. The affidavit included no reference to any actual or alleged mental impairment.
 
 
 17
 Discovery was conducted, and both sides filed motions for summary judgment. All of the defendants asserted a statute of limitations defense. The Montgomery County defendants (the county, the sheriff, and the deputies) also asserted a right to summary judgment because they had not been involved in the arrest of Ms. Morris and were not responsible for her detention at the Institute. The county further submitted that Ms. Morris' claims relating to her 62-minute jail stay on August 20, even if not barred by the statute of limitations, presented no constitutional violation. The City of Clarksville defendants (the city, the police chief, and the police officers) asserted that Ms. Morris' arrest was legal and that the prosecution was supported by probable cause. They presented evidence that the force used in effecting Ms. Morris' arrest was reasonable and thus did not violate her Fourth Amendment rights. They suggested that the Second Amendment claim was not cognizable under Sec. 1983, and that the police chief and his officers were entitled to qualified immunity. All of the defendants maintained that Ms. Morris had failed to produce sufficient evidence to support her pendent state law claims, and they asked the district court to decline to exercise pendent jurisdiction.
 
 
 18
 The district court (Echols, J.) granted the defendants' motions for summary judgment, concluding that most of the plaintiffs' claims were time-barred. The court applied Tenn.Code Ann. Sec. 28-3-104(a)(3), which establishes a one-year time limitations period for all civil damage actions brought under the federal civil rights statutes. The court noted that Ms. Morris' arrest occurred on August 20, 1990, one year and six days prior to the commencement of the action.
 
 
 19
 The district court found no merit in the plaintiffs' various arguments as to why the statute of limitations should be tolled. The court decided that the plaintiffs' fraudulent concealment claim lacked merit, because the withholding of Ms. Morris' arrest and medical records was irrelevant to her discovery of a cause of action. The court noted that all three plaintiffs had stated in deposition testimony that on August 20, 1990, they had believed that their rights had been violated. It was clear that the plaintiffs had discovered their cause of action on that date, the court said, and it was clear that the supposed withholding of records did not make Ms. Morris "any less aware of her injury or her cause of action" on that date.
 
 
 20
 The district court further held that the statute of limitations had not been tolled by any mental impairment from which Ms. Morris may have suffered. While recognizing that insanity can toll a statute of limitations, the court opined that any argument regarding Mary Morris' temporary insanity "defies logic." "On the one hand," wrote the district court,
 
 
 21
 "Ms. Morris argues that the statute of limitations on her federal civil rights claim should be tolled because she was admittedly mentally impaired not only at the time of her arrest, but also for some indefinite time subsequent thereto during which she was institutionalized. On the other hand, Ms. Morris bases a large part of her substantive federal claim upon the fact that she was wrongly placed in a mental institution against her will, and that she was competent at all times relevant thereto. If indeed Ms. Morris was competent during this time, then the statute of limitations has run on her claim, and her action should be dismissed. If Ms. Morris was not competent during the relevant time, then she has failed to assert a viable, substantive federal claim because her institutionalization in that instance would be appropriate and otherwise unobjectionable. The law will not support Ms. Morris' efforts to have it both ways. Accordingly, her arguments in support of tolling the applicable statute of limitations fail under the applicable law."
 
 
 22
 The district court also granted summary judgment to the county defendants on Ms. Morris' claim that they had unconstitutionally deprived her of her liberty by delivering her to the Institute and not subsequently returning to pick her up. The court explained that the deputy sheriffs had no duty beyond transporting Ms. Morris to the Institute under the terms of the state court order, and could not be held liable for failing to provide her with a reasonable means of escape from the institution.
 
 
 23
 Having disposed of all of the plaintiffs' federal claims, the district court declined to exercise supplemental jurisdiction over the state law claims. These claims were dismissed without prejudice.
 
 
 24
 The plaintiffs have perfected a timely appeal.
 
 III
 
 25
 Our review of a district court's grant of summary judgment is de novo. Deaton v. Montgomery County, 989 F.2d 885, 887 (6th Cir.1993). Summary judgment is appropriate when the pleadings, affidavits, depositions, admissions, and answers to interrogatories show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When a defendant moves for summary judgment, a plaintiff may not rest on the simple allegations of his complaint; he must produce affirmative evidence showing the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).
 
 
 26
 The plaintiffs' first contention is that the district court erred in dismissing the majority of their claims on statute of limitations grounds. The plaintiffs argue that there is a genuine issue of material fact as to whether Ms. Morris suffered from a mental disability at the time of her August 20 arrest, just as there is a factual issue as to whether she suffered from such disability at any time thereafter. They point to the letter from the Institute stating that although Ms. Morris was not subject to involuntary commitment, she nonetheless appeared to have an insanity defense to the reckless endangerment and gun possession charges.
 
 
 27
 The plaintiffs' argument is unavailing. Neither in their final amended complaint nor in their responses to the defendants' motions for summary judgment did the plaintiffs assert that the statute of limitations was tolled by Ms. Morris' mental impairment. The plaintiffs are not free to raise issues here that were not presented to the trial court. See Liberles v. County of Cook, 709 F.2d 1122, 1126 (7th Cir.1983) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal.").[1]
 
 
 28
 The plaintiffs' estoppel argument is similarly baseless. The plaintiffs say that the defendants took the position that Ms. Morris was mentally infirm at the time of her arrest and during her period of incarceration. It has never been demonstrated that the defendants did in fact take such a position, nor has it been shown that the plaintiffs relied thereon to their detriment.[2]
 
 
 29
 Only two of the plaintiffs' federal claims involve events occurring after August 26, 1990: the claim that the sheriff and his deputies unconstitutionally deprived Ms. Morris of her liberty by transporting her to the Institute and failing to pick her up at some later date, and the claim that the police chief and sheriff violated the plaintiffs' civil rights by not preventing the burglarization of their home in September 1990 and in May and June of 1991.
 
 
 30
 The latter claim is clearly one upon which relief cannot be granted under Sec. 1983. DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189 (1989). As to the former claim, the district court was correct in explaining that the failure to provide a "reasonable means of escape" from the institution could have violated Ms. Morris' rights only if the defendants owed her a duty to do that which they did not do. Under Tennessee law, the defendants were under no duty to do anything other than to take Ms. Morris to the Institute pursuant to the court order. The judge never ordered the defendants to retrieve Ms. Morris, and it has not been shown that they had authority to ask the hospital for her release. It is clear that the sheriff and his deputies made no decisions regarding Ms. Morris' admission to the Institute or her diagnosis, treatment, or length of hospitalization there. It is also clear that they had no duty to determine whether her evaluation, care, and hospitalization were proper. Therefore, they did not violate Ms. Morris' rights by not retrieving her from the institution. If her confinement was illegal, the sheriff and his deputies were not liable for it because they cannot be said to have "imprisoned" Ms. Morris merely by driving her to the Institute pursuant to court order.
 
 
 31
 The district court's decision not to exercise pendent jurisdiction over the state claims must be upheld unless it represents an abuse of discretion. The district court's discretion in this matter is guided by the terms of 28 U.S.C. Sec. 1367(c), which provides as follows:
 
 
 32
 "The district courts may decline to exercise supplemental jurisdiction over a [pendent state law] claim ... if--
 
 
 33
 (1) the claim raises a novel or complex issue of State law,
 
 
 34
 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
 
 
 35
 (3) the district court has dismissed all claims over which it has original jurisdiction, or
 
 
 36
 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."
 
 
 37
 Under the circumstances presented here, the district court's decision not to exercise jurisdiction was explicitly sanctioned by subsection (c)(3). Cf. Rhyne v. Henderson County, 973 F.2d 386, 395 (5th Cir.1992).
 
 
 38
 The judgment of the district court is AFFIRMED. The defendants have asked us to impose sanctions under Rule 38, Fed.R.App.P., but we decline to do so; the request for sanctions is DENIED.
 
 
 
 *
 The Honorable Barbara K. Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The district court addressed the issue of Mary Morris' mental condition sua sponte in its summary judgment order. It observed that the plaintiffs could not maintain that there existed a genuine issue of material fact as to whether Mary was insane, after having repeatedly asserted throughout the course of the litigation that she was not. We think the court's reasoning on this point was sound
 
 
 [2]
 In their responses to the defendants' motions for summary judgment, the Morrises argues that the statute of limitations should be tolled because the defendants fraudulently concealed various documents. The district court rejected this argument, and the plaintiffs have not pursued it on appeal