*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0206P (6th Cir.)
File Name: 00a0206p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

LOUIS T. BAUER,
      *Plaintiff-Appellant,*

    *v.*

BETTY D. MONTGOMERY,
      *Defendant-Appellee.*

No. 98-3993

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 97-07395—David A. Katz, District Judge.

Argued: September 16, 1999

Decided and Filed: June 21, 2000

Before: BATCHELDER and GILMAN, Circuit Judges;
HOOD, District Judge.*

————————————

## COUNSEL

**ARGUED:** W. David Arnold, NATHAN & ROBERTS, Toledo, Ohio, for Appellant. Jack W. Decker, OFFICE OF THE ATTORNEY GENERAL, EMPLOYMENT LAW

---

\* The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

SECTION, Columbus, Ohio, for Appellee. **ON BRIEF:** W. David Arnold, NATHAN & ROBERTS, Toledo, Ohio, for Appellant. Jack W. Decker, OFFICE OF THE ATTORNEY GENERAL, EMPLOYMENT LAW SECTION, Columbus, Ohio, for Appellee.

HOOD, D. J., delivered the opinion of the court, in which GILMAN, J., joined. BATCHELDER, J. (pp. 11-13), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

DENISE PAGE HOOD, District Judge. On May 13, 1997, Louis T. Bauer filed the instant suit against Betty D. Montgomery, the Ohio Attorney General, claiming: 1) that Montgomery violated Bauer's right to freedom of speech and association under the First and Fourteenth Amendments to the United States Constitution as secured by 42 U.S.C. § 1983; 2) that Montgomery violated Plaintiff's liberty interest arising under the Fourteenth Amendment of the United States secured by 42 U.S.C. § 1983; and 3) that Montgomery violated Bauer's right to freedom of speech and association under Article 1, §§ 3 and 11 of the Ohio Constitution.

In 1978, Louis T. Bauer was an executive assistant to United States Senator John Glenn, a Democrat, in charge of the Senator's Toledo Office. Senator Glenn closed his Toledo Office in January 1984 and Bauer lost his job. Senator Glenn made inquiries on Bauer's behalf and Bauer was later contacted by Kevin Kerns, Chief of the Crime Victims Section of the Attorney General's Office. Bauer was hired as a field investigator. From April 16, 1985 to June 23, 1995, Louis T. Bauer was employed as a Crime Victims Claim Investigator for the State of Ohio's Attorney General's Office. Bauer is a registered Democrat. From 1985 to 1994, a Democrat held the position of Attorney General in Ohio. In November 1994, Betty D. Montgomery was elected as the Attorney General. She is a Republican. Montgomery

replaced Bauer with Jerry Eversman. Eversman had served as a Juvenile Probation Officer for five and one-half years immediately before becoming a field investigator. Eversman is also the Chief of Police for the Village of Haskins, Ohio.

At a case management conference on October 7, 1997, the district court bifurcated pretrial briefing on the issues of qualified immunity and the merits of Bauer's claims. The only issue before the district court was Montgomery's motion for summary judgment based on qualified immunity. On July 27, 1998, the district court issued an opinion and order granting Montgomery's motion for summary judgment and dismissing the Complaint, without reaching the qualified immunity issue. The district court instead found that Bauer failed to state a claim under Section 1983 and that Bauer failed to allege the violation of a federal right.

On appeal, Bauer claims that the district court erred in granting summary judgment to Montgomery because there is a genuine issue of material fact as to whether there was a change in the inherent duties of the position from which Bauer was terminated. Montgomery claims that because she has modified the position so that political affiliation is an appropriate consideration, the district court properly granted summary judgment. For the reasons set forth below, the district court's order and judgment is REVERSED.

## I. JURISDICTION

Jurisdiction is proper under 28 U.S.C. § 1331 because the Complaint alleges a claim under 42 U.S.C. § 1983. Appellate jurisdiction is appropriate under 28 U.S.C. § 1291 because Bauer appeals from a final judgment entered by the district court. Bauer timely filed a notice of appeal.

## II.  ANALYSIS

### A.   Standard of Review

Bauer claims that the district court erred in entering summary judgment in favor of Montgomery.  A district court's grant of summary judgment is subject to a *de novo* review by the appellate court. *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir. 1990); *Eaton v. Montgomery County*, 989 F.2d 885 (6th Cir. 1993).

Rule 56(c) provides that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts*. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23.  A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

enhanced capacity with respect to Montgomery.  Thus, while these witnesses' limited testimony is perhaps instructive on the issue of the scope of Mr. Eversman's current duties, it is not conclusive.  Moreover, because their testimony is reconcilable with the testimony of Montgomery and Eversman, it does not create a genuine disputed issue of material fact.

Finally, because I agree with the district court's conclusion that Mr. Bauer's due process claim was dependent upon his First Amendment claim, I would also affirm the district court's dismissal of Count II of Mr. Bauer's complaint. Therefore, for the reasons described above, I respectfully dissent from the majority's opinion.

whether the job duties of such a position are political, we must analyze the position in light of the job description as the job is envisioned by the new appointing authority. *See Smith v. Sushka*, 117 F.3d 965, 970 (6th Cir. 1997) ("The two tests outlined in *Faughender*, 'the job as actually performed' and 'the job as envisioned,' are not completely separate and independent. Rather, if one or the other test is clearly and directly applicable, the other is not independently necessary, although it may be somewhat informative.") (citing *McCloud v. Testa*, 97 F.3d 1536, 1561 (6th Cir. 1996)).

The Toledo CVCI position is an "unclassified" position. However, contrary to our instruction in *McCloud*, the majority takes a narrow view of the evidence and concludes that Mr. Eversman's duties are non-political. As the majority opinion acknowledges, Attorney General Montgomery argues that Eversman is her "eyes and ears" in the community and her "alter ego" at the regional level. Montgomery's vision of the role of the Toledo CVCI is obviously political. Overall, the duties of the Toledo CVCI -- both as envisioned by Montgomery and as actually implemented by Eversman and Montgomery -- establish that the Toledo CVCI position involves the communication of confidential information to one with policymaking authority. Thus, I would find that the Toledo CVCI position is sufficiently political to fall within Category Three and is thus an exception to the rule laid out in *Branti*.

The majority opinion relies upon the testimony of Jeff Frye and Bill Dinan, Bauer's direct supervisor and Eversman's current supervisor, respectively, as the basis for finding a disputed issue of material fact that would preclude summary judgment. However, the testimony of Frye and Dinan focuses generally on the role of the CVCI statewide, as opposed to the specific function of the CVCI in the Toldeo area. Moreover, they testified with regard to the responsibilities inherent in Eversman's position as it relates to Frye and Dinan only, and not with regard to his duties relating to Attorney General Montgomery. There is no evidence that either Frye or Dinan would have any knowledge or awareness of Eversman's

## B.   Political Patronage Dismissals

The Supreme Court, in a trilogy of cases, has determined that with limited exceptions, the Government cannot condition public employment on the basis of political affiliation. *Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); and *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990).

In *Elrod*, the Supreme Court held that "the practice of patronage dismissals clearly infringes First Amendment interests." 427 U.S. at 360. The Supreme Court noted that exceptions exist under appropriate circumstances. Patronage dismissals are permitted when the positions involve policy making roles. *Id.* at 367. In determining whether an employee occupies a policy making position, the focus should be whether the employee acts as an advisor or formulates plans for the implementation of broad goals. *Id.* The Supreme Court in *Branti* reaffirmed the *Elrod* holding that an individual employee's First Amendment rights must yield to the Government's interest only when the employee's political affiliation "would interfere with the discharge of public duties." *Branti*, 445 U.S. at 517. A public employer must demonstrate that a certain political affiliation is "essential to the discharge of the employee's government responsibilities." *Id.* at 518. In *Rutan*, the Supreme Court narrowed the range of jobs legitimately subject to patronage removal when it held that a Government's interest in securing employees who will be loyal in the implementation of its policies can be adequately served by choosing or dismissing only "high level employees" on the basis of political views. *Rutan*, 497 U.S. at 74.

The district court found that the *Branti* exception applied to the instant case. Applying the *Branti* exception to a given employment position, the district court must examine both the inherent duties of the position and the duties that the new holder of the position will perform. *Faughender v. City of North Olmsted*, 927 F.2d 909, 913 (6th Cir. 1991). When looking at the nature of the position and the duties to be

performed, the court must look at the position as envisioned by the newly elected official and as performed by the new employee, rather than the tasks that had previously been performed by the plaintiff, because the official must be permitted to reorganize the staff. *Id.* at 914-915. The Sixth Circuit has identified four categories of positions which presumptively fall into the *Branti* exception:

Category One: positions specifically named in relevant federal, state, county or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted.

Category Two: positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions.

Category Three: confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communications to category one positions, category two positions or confidential advisors.

Category Four: positions that are part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

*McCloud v. Testa*, 97 F.3d 1536, 1556 (6th Cir. 1996).

The district court below found that the field investigator position fit into Category Three. The district court relied on Montgomery's vision of the field investigator's position as

---

---

**DISSENT**

---

ALICE M. BATCHELDER, Circuit Judge, dissenting. I write separately because I believe that the position of Crime Victims Claims Investigator ("CVCI") in Toledo is one that falls within the *Branti* exception and because I believe Mr. Bauer has presented no genuine issues of material fact that would preclude summary judgment in this case. I would therefore affirm the district court's opinion.

As the majority opinion rightly sets forth, this Circuit has identified four categories of positions which presumptively fall into the *Branti* exception. *See McCloud v. Testa*, 97 F.3d 1536, 1556 (6th Cir. 1996). The district court found that the Toledo CVCI position fit into Category Three, and I agree with this conclusion for the following reasons.

According to Eversman, he provides information to police chiefs regarding services, conferences and training offered by the Attorney General's office; he receives feedback on Attorney General programs; he networks to "enhance the level of trust, cooperation and communication between local law enforcement" and the Attorney General's office; and he speaks at the local university and high school. These duties demonstrate his political role as an advisor and representative of the Attorney General to the law enforcement community in the Toledo area.

We have held that the *Branti* exception "is to be construed broadly, so as presumptively to encompass positions placed by the legislature outside of the 'merit' civil service." *McCloud*, 97 F.3d at 1542. Accordingly, even "if there is any ambiguity about whether a particular position falls into any of the [the categories] (and so also within the *Branti* exception), it is to be construed in favor of the governmental defendants when the position at issue is unclassified or non-merit under state law. . . ." *Id* at 1557. Further, when considering

REMANDED for further proceedings not inconsistent with this opinion.

performed by Eversman. The position was to include a more active role in supporting criminal law enforcement by providing more extensive services to local law enforcement agencies. The district court found that Eversman attends more monthly meetings of the regional consortium of northwestern Ohio police agencies, acts as a liaison between local police agencies and the Attorney General's office, distributes information to victim witness programs, lectures to local high school and university classes, and gathers feedback for improving the crime victims' program. The district court relied on Montgomery's arguments that Eversman is directly involved in the implementation of policies that were part of her campaign platform and that political loyalty from the individual implementing those policies is necessary to effectuate those polices. Montgomery also argues that Eversman is her "eyes and ears" in the community, collecting feedback from the community and exchanging information and promoting awareness of crime victims' issues. Montgomery claims that Eversman acts as her "alter ego" at the regional level because he provides information to the public about the Attorney General's crime victims' program. Montgomery asserts that even if the inherent general duties of Eversman's position are not political, Eversman's job tasks as envisioned by Montgomery are political.

There is no dispute that the "inherent duties" of the field investigator position are non-political. Some of the duties included in the position description are: to perform background investigations of reparations applications of criminally injurious conduct; to correspond with law enforcement officials; interview claimants; maintain records of investigations; and file timely reports. In this regard, Bauer has met the first prong of the *Faughender* test.

As to the second prong—the duties of the new holder of the position—the district court erred in failing to find that genuine issues of material fact existed regarding the duties actually performed by Eversman. Although Montgomery testified to her "vision" of what the position should entail,

there is testimony from officials intimately familiar with Eversman's work that his job functions are no different than those performed by Bauer. Jeff Frye, the statewide supervisor of the field investigators, and Bill Dinan, Bauer's direct supervisor and Eversman's current supervisor, testified that there has been no change in the job description, job duties or requirements, job procedures, job functions, source of salary and personnel position control number for the position. There is testimony that the field investigator makes no economic determinations and no recommendation as to who is eligible for benefits. (There is no dispute that the duties involved are governed by statute.) There are genuine issues of material facts as to whether the new employee is performing different job functions than those performed by Bauer.

As to Montgomery's argument that Eversman is her "eyes and ears" in the community, as defined in Category Three in *McCloud*, the district court does not cite any evidence showing that the field investigator provides "confidential advice" to anyone. At her deposition, Montgomery testified that she could barely remember when she had last spoken to Eversman about political matters. Montgomery provides no evidence that Eversman controls the lines of communication to Montgomery. In *McCloud*, the two examples used to illuminate the concept of controlling the lines of communication were a judge's secretary or a law clerk. Eversman's position does not appear to be akin to those two positions.

Based on the record below, the district court erred in finding that Bauer "has not stated a claim for the violation of a constitutional right based on a patronage dismissal from that position." (Order, J.A. 25) Bauer's Complaint does state a claim for the violation of a constitutional right based on a patronage dismissal claim and Bauer has presented sufficient facts showing that there are genuine issues of material fact to preclude summary judgment.

### C.  Liberty Interest

Count II of Bauer's Complaint alleges that his liberty interest has been violated. There is no dispute that Plaintiff has no statutorily created interest in continued employment as an unclassified civil servant. *Vodila v. Cleveland*, 613 F.Supp. 69, 70-71 (N.D. Ohio 1985). However, Bauer claims that he has a liberty interest under the First and Fourteenth Amendment. The Fourteenth Amendment provides that no state shall deprive any person of life, liberty, or property without due process of law. This Amendment recognizes "liberty" and "property" as co-existent human rights. First Amendment freedoms of speech and association are within the term "liberty" as protected by the due process clause of the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652 (1925); *New York ex rel. Bryant v. Zimmerman*, 278 U.S. 63 (1928); *Hughes v. Superior Court of California*, 339 U.S. 460 (1950); and *NAACP v. Alabama*, 357 U.S. 449 (1958).

The district court granted summary judgment in favor of Montgomery on Bauer's liberty interest claim because it found that Bauer failed to establish a First Amendment claim. For the reasons set forth above, the district court erred in its findings. Bauer has stated a First Amendment claim and has established sufficient facts to preclude summary judgment on his First Amendment claim. The district court improperly granted summary judgment on Bauer's liberty interest claim.

### D.  Qualified Immunity

Alternatively, Montgomery claims that she is entitled to qualified immunity. Because the district court did not reach this issue, this Court cannot consider the qualified immunity defense. The district court may address this issue on remand.

### III.  CONCLUSION

For the reasons stated above, the district court's order and judgment granting summary judgment in favor of Montgomery and against Bauer is REVERSED and the case