**Gloria L. HIBBLER, Plaintiff–Appellant,**

**v.**

**REGIONAL MEDICAL CENTER AT MEMPHIS, Defendant–Appellee.**

No. 00–6205.

United States Court of Appeals, Sixth Circuit.

June 12, 2001.

Before KENNEDY, SILER, and CLAY, Circuit Judges.

Gloria L. Hibbler, a pro se Tennessee resident, appeals a district court order and judgment dismissing her employment discrimination action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–89; and the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–19. This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Seeking a promotion and $1.5 million in damages, Hibbler sued her former employer, the Regional Medical Center of Memphis ("the Med"), for allegedly discriminating against her because of her race (African–American), disabilities (principally kyphoscoliosis and cranio-mandibular disorder), and in retaliation for filing a charge with the Equal Employment Opportunity Commission (EEOC). Hibbler is a registered dietician who was hired by the Med in March 1991. She alleged that, beginning in May 1995, the Med subjected her to a racially hostile work environment, denied her reasonable accommodation for her disabilities, and illegally terminated her employment on January 26, 1999, because of her disabilities and in retaliation for filing an employment discrimination charge. The EEOC issued a right-to-sue letter on January 13, 1999.

The district court granted the defendant's motion for summary judgment in an order and judgment filed on May 31 and entered on June 1, 2000, after determining that Hibbler failed to establish a prima facie case of either race or disability discrimination, retaliation, or violation of FMLA rights. The district court further found that the Med had articulated a legit-imate, nondiscriminatory reason for firing Hibbler, i.e., an act of insubordination. Hibbler's motion for reconsideration was denied on August 11, 2000.

On appeal, Hibbler argues that the district court erred in granting summary judgment to the defendant.

Upon review, we affirm the district court's judgment. This court reviews *de novo* a district court's grant of summary judgment, using the same test as that used by the district court. *Bauer v. Montgomery,* 215 F.3d 656, 659 (6th Cir. 2000). Thus, "[s]ummary judgment should be entered only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R.Civ.P. 56(c)). "Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Bauer,* 215 F.3d at 659. The court draws all reasonable inferences in favor of the nonmoving party, but the mere existence of a scintilla of evidence in support of a party's position will be insufficient to defeat the summary judgment motion. *Admin. Comm. Sea Ray Employees' Stock Ownership and Profit Sharing Plan v. Robinson,* 164 F.3d 981, 985 (6th Cir. 1999), *cert. denied,* 528 U.S. 1114, 120 S.Ct. 931, 145 L.Ed.2d 810 (2000).

Hibbler first asserts that she was subjected to a racially hostile work environment in violation of Title VII. The scope of protection of Title VII is not limited to economic or tangible discrimination; an employee is also protected against discrimination so severe or pervasive as to

alter the conditions of employment and create an abusive working environment. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999). Hibbler has identified only one specific incident of racial harassment, in the form of a single use of a racial epithet, in the almost eight years she was employed by the Med. Offhand comments and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the "terms and conditions of employment," and that conduct must be extreme in order to be actionable. *Id.* at 512–13 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). Under this standard, the one isolated racial insult by Hibbler's supervisor is offensive and inexcusable, but does not amount to a change in the terms and conditions of Hibbler's employment so as to constitute a racially hostile work environment. Therefore, Hibbler has failed to establish a prima facie case of racial discrimination under Title VII.

 Hibbler also complains that the Med discriminated against her because of her disabilities in violation of the ADA. She suffers principally from kyphoscoliosis, which causes neck and back pain, but Hibbler also alleged that she has craniomandibular disorder, fibromyalgia, osteoarthritis, chest pain, and depression. In order to establish a prima facie case under the ADA, Hibbler must show that: (1) she is a disabled person within the meaning of the Act, (2) she is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) she suffered an adverse employment decision due to her disability. *Sullivan v. River Valley School Dist.*, 197 F.3d 804, 810 (6th Cir.1999), *cert. denied*, 530 U.S. 1262, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000). The ADA defines a disabled person as one who has a physical or mental impairment that substantially limits one or more major life activity, has a record of such impairment, or does not have an impairment but is regarded by her employer as having one. *Id.* Once a plaintiff establishes a prima facie case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for its action, whereupon the burden then shifts back to the plaintiff, who must show that the reason given by the employer is pretextual. *Id.*

 Again, the district court did not err in granting summary judgment to the Med. Hibbler has presented neither direct nor circumstantial evidence of disability discrimination. Even if it is assumed that Hibbler's combination of medical problems substantially limits a major life activity, she testified in her deposition that, with her prescribed treatment of medication and swimming therapy, she could function. To accommodate her swimming therapy, Hibbler requested, and was granted, a reduction in work hours. The record shows that no other accommodation was requested.

 Hibbler further complained that the Med improperly counted against her the occasions that she was late for work due to her disability. The record indicates, however, that Hibbler began arriving at work an hour or more late without calling her supervisor on days that she didn't feel well. The Med was not required to overlook or accommodate frequent unscheduled—and unapproved—absences by Hibbler. " 'An employee who cannot meet the attendance requirements of the job at issue cannot be considered a "qualified" individual protected by the ADA.' " *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir.1998) (quoting *Tyndall v. Nat'l Educ. Ctrs. Inc.*, 31 F.3d 209, 213 (4th Cir.1994)).

■ Even if it is assumed that Hibbler could establish a prima facie case of disability discrimination, the Med has set forth a legitimate, nondiscriminatory reason for Hibbler's termination which Hibbler has failed to rebut. It is undisputed that she was suspended on January 26, 1999, pending investigation, after she disobeyed a directive from her supervisor to turn off the tape recorder with which she was recording a meeting. The day following her suspension, January 27, 1999, Hibbler was notified that her employment was terminated as of the 26th due to her insubordination in refusing to turn off her tape recorder. She admits that the decision to end her employment was made jointly by Randy Britton (director of employee relations), Rick Smith (vice president of support services), Trena Ingram (corporate counsel), and Donna Rains (supervisor). She makes no allegations of discrimination by Smith or Ingram, and her subjective belief that Britton "put Donna [Rains] up to a lot of stuff" is insufficient to prove discrimination.

■ Hibbler next asserts that her employment was terminated in retaliation for her filing a charge of discrimination. To establish retaliatory discrimination under either Title VII or the ADA, a plaintiff must demonstrate that: (1) she engaged in protected activity; (2) the exercise of her civil rights was known by the defendant; (3) the defendant thereafter took adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. *Allen v. Michigan Dep't of Corr.*, 165 F.3d 405, 412 (6th Cir.1999) (Title VII); *Walborn v. Erie County Care Facility*, 150 F.3d 584, 588–89 (6th Cir.1998) (ADA).

Again, the district court properly granted summary judgment to the defendant because Hibbler has failed to establish the requisite causal connection between her protected actions and the termination of her employment. *See Walborn*, 150 F.3d at 589. The mere fact that the allegedly retaliatory action took place after the EEOC charge was filed is insufficient to establish the connection. *Hafford*, 183 F.3d at 515; *Walborn*, 150 F.3d at 589. Moreover, as already noted, Hibbler's documented insubordination constitutes a legitimate, nondiscriminatory reason for her firing. *See Walborn*, 150 F.3d at 589.

■ Finally, Hibbler claims that she was denied her rights under the FMLA, which entitles an eligible employee to 12 work weeks of unpaid medical leave for a serious health condition that renders the employee incapable of fulfilling her job responsibilities. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir.2000). However, "to invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 523 (6th Cir.1998). Accordingly, an employer may require proper certification issued by a health care provider as to the health condition of the employee. 29 U.S.C. § 2613.

The Med was clearly entitled to summary judgment as to Hibbler's FMLA claim. The record shows that Hibbler requested FMLA leave in September 1995, providing the necessary medical documentation in support. After she had used the 480 hours of leave to which she was entitled, her supervisor, in a memo dated January 29, 1997, requested new documentation in support of FMLA recertification. Hibbler does not even claim that she provided the requested medical documentation or that she was denied recertification upon request. Therefore, she was not entitled to further protection under the FMLA. *See Brohm*, 149 F.3d at 523.

Accordingly, the district court's judgment, entered on June 1, 2000, is affirmed. Rule 34(j)(2)(C), Rules of the Sixth Circuit.