Collins v. Putt

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2019

(Argued: March 9, 2020        Decided: October 29, 2020)

Docket No. 19-1169-cv

————————————————

JEREMY COLLINS,

*Plaintiff-Appellant*,

v.

REBECCA PUTT, IN HER INDIVIDUAL AND OFFICIAL CAPACITY,
ED KLONOSKI, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF
CHARTER OAK STATE COLLEGE,

*Defendants-Appellees*,

CHARTER OAK STATE COLLEGE,

*Defendant*.[*]

————————————————

Before:

RAGGI, LOHIER, and MENASHI, *Circuit Judges*.

Jeremy Collins, a student at Charter Oak State College, brought suit against his college instructor Rebecca Putt, alleging that Putt violated his First Amendment rights by removing an online blog post that he made in response to a class assignment. Collins further alleged that Putt and Charter Oak's President, Ed Klonoski, violated his due process rights under the Fourteenth

———————————

[*] The Clerk of Court is directed to amend the caption as set forth above.

Amendment in connection with disciplining him for the blog post. The United States District Court for the District of Connecticut (Covello, J.) dismissed Collins's suit under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, we **AFFIRM** the District Court's judgment dismissing Collins's claims.

Judge Menashi concurs in the judgment in a separate opinion.

JEREMY COLLINS, *pro se*, Stamford, CT.

MARY K. LENEHAN, Assistant Attorney General, *for* William Tong, Attorney General of the State of Connecticut, Hartford, CT, *for Defendants-Appellees* Rebecca Putt and Ed Klonoski.

LOHIER, *Circuit Judge*:

Jeremy Collins, a student at Charter Oak State College, filed this lawsuit under 42 U.S.C. § 1983, alleging that his instructor at the college, Defendant-Appellee Rebecca Putt, violated his First Amendment rights when she removed from a college message board the online blog post that Collins submitted in response to a class assignment. Collins further alleged that Putt and Charter Oak's President, Ed Klonoski, violated his right to due process under the Fourteenth Amendment by failing to follow the college's internal disciplinary policies before disciplining him for the post. The United States District Court for the District of Connecticut (Covello, J.) dismissed Collins's suit for failure to state a claim upon which relief could be granted. See Fed. R.

2

Civ. P. 12(b)(6). On appeal, Collins contends that the District Court's dismissal was error. He principally argues that the District Court applied the wrong legal standard when evaluating his First Amendment claim and misread the college's disciplinary policies when considering his Fourteenth Amendment claim. For the reasons that follow, we **AFFIRM** the District Court's judgment dismissing Collins's claims.

## BACKGROUND

### I

The following facts are taken from Collins's operative, second amended complaint and from documents integral to it. See WC Cap. Mgmt., LLC v. UBS Sec., LLC, 711 F.3d 322, 325 (2d Cir. 2013).

In 2017 Collins enrolled in an online class entitled "Communications 101" at Charter Oak State College. The class was taught using software that "provides a virtual classroom environment," which allows for the submission of assignments and for communication via a message board available only to students enrolled in the class, the class instructor, and college administrators. App'x 9–10. Two weeks into the term, Putt, the instructor, asked the class to watch a video that depicted a young man conversing with and assisting an

3

elderly disabled person.  Putt then provided the class with a list of questions about the video and instructed the students to post their answers to those questions on the virtual classroom's online message board.  The questions required the students to evaluate the conversation between and the perceptions of the individuals depicted in the video.

Collins responded with a blog post that his complaint describes as "intentionally humorous, ironic and provocative" and as "includ[ing] what might be reasonably called a critique of the assignment and materials themselves."  App'x 26.  Collins's blog post, which is attached to his complaint, states that the assigned video was "excruciatingly awkward," "ridiculous," and depicted "two complete idiots hav[ing] a conversation that could only take place in an alternate reality on a planet far, far away."  App'x 41.  The post describes the older character as "cranky," "self pitying," "offended," "angry," and engaged in "miserable griping."  App'x 41.

In response to the post, Putt told Collins that while she did not "mind a bit of humor here and there, ranting about the classroom materials in a manner that some might find offensive will not be tolerated."  App'x 29.  Putt soon removed Collins's post, as well as all the comments on the post that had

been made by Collins and other classmates. Collins accused Putt of censoring his work, and he promised to demand that Putt "be educated on the civil rights of . . . students." App'x 30.

## II

Collins eventually sued Putt, claiming in his operative complaint that Putt's deletion of his blog post violated his First Amendment right to freedom of expression. The District Court, relying on <u>Hazelwood School District v. Kuhlmeier</u>, 484 U.S. 260, 271–73 (1988), concluded that Putt's deletion did not violate Collins's First Amendment rights because it was "reasonably related to legitimate pedagogical concerns." The District Court therefore dismissed the claim and ultimately dismissed Collins's complaint in its entirety.

This appeal followed.

## DISCUSSION

In this opinion we address four issues. First, we consider whether it was error for the District Court to rely on the <u>Hazelwood</u> standard rather than the standard announced by the Supreme Court in <u>Tinker v. Des Moines Independent Community School District</u>, 393 U.S. 503 (1969). This requires that we address Collins's argument that his blog post was not sponsored by

the college. Second, we consider whether the District Court properly applied the Hazelwood standard to the alleged facts in this case. Third, we determine whether Putt's alleged actions were plausibly viewpoint discriminatory so as to state a First Amendment claim.[1] Finally, we resolve Collins's due process argument under the Fourteenth Amendment. We address each of these issues in turn, mindful that "[w]e review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Dolan v. Connolly, 794 F.3d 290, 293 (2d Cir. 2015) (quotation marks omitted).

---

[1] Although Collins argues that Putt deleted his post because she found it offensive, see Pet'r Br. at 4, 7, 8, 10, 11, 12, he does not specify what viewpoint was allegedly subjected to discrimination. In the Putt statement attached to Collins's complaint, she describes the "manner" of Collins's expression—not the viewpoint expressed—as "offensive." App'x 29. "It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." Tolbert v. Queens Coll., 242 F.3d 58, 75 (2d Cir. 2001) (quotation marks omitted). While we might conclude that Collins failed to sufficiently develop a viewpoint discrimination argument here, we do not deem that point waived because "pleadings and briefs submitted by pro se litigants" like Collins are properly read "to raise the strongest arguments they suggest." McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 156 (2d Cir. 2017) (quotation marks omitted). Following that principle here, we address viewpoint discrimination on the merits in Part III of this opinion.

I

We first consider whether the District Court erred by analyzing Collins's First Amendment claim under Hazelwood. We conclude that it did not.

The Supreme Court has announced various tests or "standards for assessing whether a school's censorship of student speech is constitutionally permissible." Guiles ex rel. Guiles v. Marineau, 461 F.3d 320, 324 (2d Cir. 2006). Only two of these standards, under Hazelwood and Tinker, are relevant to this appeal. We have referred to Hazelwood and Tinker as identifying "two categories of student expression in the school environment, each of which merits a different degree of judicial scrutiny in connection with school-imposed speech restrictions," Peck ex rel. Peck v. Baldwinsville Cent. Sch. Dist., 426 F.3d 617, 627 (2d Cir. 2005), with Tinker being more protective of student speech than Hazelwood, see DeFabio v. E. Hampton Union Free Sch. Dist., 623 F.3d 71, 79 (2d Cir. 2010).

If Collins's blog post constituted a "school-sponsored expressive activit[y]," then the deferential standard announced in Hazelwood applies. Hazelwood, 484 U.S. at 273; see Marineau, 461 F.3d at 327. We evaluate

7

whether a student's speech is "school[] sponsored" based on whether "students, parents, and members of the public might reasonably perceive" the speech "to bear the imprimatur of the school." Hazelwood, 484 U.S. at 271. Under the Hazelwood standard, educators may regulate student speech "so long as their actions are reasonably related to legitimate pedagogical concerns." Id. at 273. This is because "[t]he determination of what manner of speech in the classroom or in school assembly is inappropriate properly rests with the school . . . rather than with the federal courts." Id. at 267 (quotation marks omitted).

If, on the other hand, Collins's post constituted "a student's personal expression that happens to occur on the school premises," id. at 271, then the standard is supplied by Tinker. Under the Tinker standard, school officials may regulate student speech that the school does not sponsor if that speech would "materially and substantially disrupt classwork and discipline in the school." Marineau, 461 F.3d at 325 (citing Tinker, 393 U.S. at 513).[2]

---

[2] Beyond Hazelwood and Tinker are two additional standards related to the regulation of school speech, neither of which is relevant here. First, "schools have wide discretion to prohibit speech that is less than obscene—to wit, vulgar, lewd, indecent or plainly offensive speech." Marineau, 461 F.3d at 325 (citing Bethel Sch.

8

Regardless of the standard, we keep in mind that the First Amendment rights of students "must be applied in light of the special characteristics of the school environment." Morse v. Frederick, 551 U.S. 393, 397 (2007) (quotation marks omitted).

Collins insists that Tinker, not Hazelwood, governs this case. We disagree. As we have explained, Hazelwood "comes into play . . . when the student speech is school-sponsored or when a reasonable observer would believe it to be so sponsored." Marineau, 461 F.3d at 327 (quotation marks omitted). Hazelwood applies to student speech that "may fairly be characterized as part of the school curriculum, whether or not [it] occur[s] in a traditional classroom setting, so long as [it is] supervised by faculty members

Dist. No. 403 v. Fraser, 478 U.S. 675, 683–85 (1986)). Second, "schools may restrict student speech that they "reasonably [] regard[] as encouraging illegal drug use." R.O. ex rel. Ochshorn v. Ithaca City Sch. Dist., 645 F.3d 533, 541 (2d Cir. 2011) (citing Morse v. Frederick, 551 U.S. 393, 397 (2007)). The Supreme Court has suggested in passing that there may be additional standards beyond Hazelwood, Tinker, Fraser, and Morse. See Doninger v. Niehoff, 642 F.3d 334, 354 (2d Cir. 2011) (citing Morse, 551 U.S. at 405). But it has yet to identify them. "[W]e neither recognize any such [additional standards], nor express a view as to their desirability," but "this qualification does not rule out the possibility that some such hitherto unrecognized [standard] may exist." Id.

and designed to impart particular knowledge or skills to student participants and audiences." Peck, 426 F.3d at 628 (quotation marks omitted).

Here, Collins's blog post bears the hallmarks of school sponsorship. It was made specifically in response to a class assignment, under the supervision of a college faculty member, and on a message board that was provided by the college offering the class. The message board in turn was designed as a pedagogical tool to convey information to class participants and to receive communications from them, particularly, their completed class assignments. The message board bore the college's initials and was accessible only to the class's students, instructor, and the college's administrators. We have pointed to the same or similar characteristics to conclude that student speech was "school-sponsored, or at least . . . constituted an expressive activit[y] that students . . . and members of the public might reasonably perceive to bear the imprimatur of the school, which is sufficient to trigger the application of Hazelwood." R.O. ex rel. Ochshorn v. Ithaca City Sch. Dist., 645 F.3d 533, 541 (2d Cir. 2011) (quotation marks omitted).[3] Under these

---

[3] We recognize that "Hazelwood explicitly reserved the question of whether the substantial deference shown to high school administrators was appropriate with

circumstances, the District Court did not err in determining that the Hazelwood standard rather than the Tinker standard applies.

                                    II

Nor did the District Court err in determining that Putt's deletion of Collins's post was "reasonably related to legitimate pedagogical concerns," in satisfaction of the Hazelwood standard. Peck, 426 F.3d at 633. Indeed, we have no doubt that Putt's response to Collins's post was reasonably related to legitimate pedagogical concerns. As Collins himself alleged, his post "critique[d] . . . the assignment and materials themselves," App'x 26, which was not the assignment. Putt's assignment required students to identify the perceptions of the video's two characters and to discuss how those perceptions affected their dialogue. Collins's initial post did neither. It focused instead on his perception of the video's speciousness, not the characters' perceptions of their situation or the effect of those perceptions on

---

respect to school-sponsored expressive activities at," as here, "the college or university level . . . where the relation between students and their schools is different and at least arguably distinguishable." Amidon v. Student Ass'n of State Univ. of N.Y. at Albany, 508 F.3d 94, 105 (2d Cir. 2007) (quotation marks omitted). Because neither party argues that Hazelwood applies with less force in the university context, particularly with respect to the posting of completed class assignments, we apply Hazelwood without qualification in this case.

their dialogue. Absent some other basis in fact not alleged in the complaint, Putt's removal of Collins's blog post is thus most reasonably understood to ensure that the message board was used for its school-sponsored, pedagogical purpose, i.e., for students to post completed class assignments and for online discussion of those postings to further the communications lessons the assignment was intended to impart, without diverting attention to the non-responsive subject of the quality of classroom materials. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 682 (2009) ("As between that obvious alternative explanation for the arrests, and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion." (quotation marks omitted)). Such action was constitutionally permissible under Hazelwood. See Peck, 426 F.3d at 629 n.8 ("Unquestionably, whether a student's work is responsive to an assignment . . . [is] part and parcel of a school's responsibility to ensure that participants learn whatever lessons the activity is designed to teach . . . ." (quotation marks omitted)). Collins's conclusory assertion that it was "not off-topic" for him "to voice his own perceptions and viewpoints," App'x 26, cannot by itself state a plausible claim for discrimination. See Iqbal, 556 U.S. at 678 (stating that "mere conclusory

12

statements" cannot plead plausible claim); Krys v. Pigott, 749 F.3d 117, 128 (2d Cir. 2014) (holding that court is not "required to accept as true allegations that are wholly conclusory").[4]

                                    III

Our Circuit has held that school-sponsored speech may not be regulated in a viewpoint discriminatory manner "even if [doing so] is reasonably related to pedagogical concerns." Peck, 426 F.3d at 633. We conclude that Collins has failed plausibly to allege that Putt's actions here constituted viewpoint discrimination. To the contrary, Putt's deletion of Collins's post reflected a content-based restriction that the Supreme Court has instructed us to tolerate in the school setting. As Hazelwood itself affirms: "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities." 484 U.S. at 273. Likewise, where, as here, the school-sponsored expressive activity is a class assignment, an educator does not offend the First

---

[4] A student's posting of material not responsive to a class assignment—whether on a classroom bulletin board or an electronic message board—may be sufficiently disruptive to classwork to allow its removal even under the Tinker standard, but we need not here conclusively decide whether the challenged removal satisfies Tinker as well as Hazelwood.

Amendment by limiting the content of posted student speech to that which reasonably responds to the assignment (whatever its viewpoint) and by excluding speech that opts instead to criticize the assignment (whatever its viewpoint).

As Collins accepts, Putt explained to him that his blog post was deleted because its content was unresponsive to the class assignment. In an email to Collins, Putt described the blog post as a "rant" targeted at the adequacy of the "classroom materials" rather than the assigned evaluation of the perceptions of the video's characters. App'x 29. Collins appears to have acknowledged as much. For example, in his second amended complaint, he alleges that "the true reason" for Putt's challenged actions was to "censor[]" Collins's "'ranting' about the classroom materials." App'x 32. Further, he admits that his blog post "might reasonably [have been] called a critique of the assignment and the materials themselves." App'x 26. And Collins's blog post itself stated that he was "digress[ing]." App'x 41. Thus, we can conclude as a matter of law that, as Collins himself has acknowledged, Putt's challenged actions were based on the content and style of his blog post, which

14

failed to respond to the class assignment, and not on the particular viewpoint expressed therein.

It is true that even content- and style-based restrictions on speech must be imposed evenhandedly, without regard to viewpoint. See Peck, 426 F.3d at 631–33. Collins submits that a plausible claim of viewpoint discrimination is indicated here by the fact that Putt did not remove other posts that expressed negative views of the portrayal of the disabled person in the assigned video. See App'x 27. But Collins also alleges that these other posts contained "more guarded appraisals" than his. App'x 27. That Putt did not delete the "more guarded" student posts belies Collins's claim that he was discriminated against for a viewpoint expressed in his post rather than for the manner in which he expressed himself. Indeed, Collins acknowledged at oral argument that other posts' criticisms focused on the perceptions of the video's characters and were thus reasonably responsive to the assignment. See Oral Argument, at 11:44–13:24 Collins v. Putt (No. 19-1169-cv), http://www.ca2.uscourts.gov/decisions. By contrast, the point of Collins's statements was not to perform the assignment but, rather, to emphasize that the "materials did not adequately express the course intent." Id. An

15

instructor does not engage in viewpoint discrimination when she permits student speech that endeavors to perform an assignment, whatever its viewpoint, but deletes speech that predominantly criticizes the assignment.

In summary, this is a case in which an assignment posed open-ended questions about certain characters' perceptions and those perceptions' effect on their conversation. The Plaintiff, rather than respond to the assignment, ranted about the inadequacy of the materials as a vehicle for teaching communications, thereby addressing a subject entirely outside the scope of the assignment and distracting from the lesson's pedagogical purpose. Thus, in this context of an online message board for completing course assignments, we conclude that Collins was not subjected to viewpoint discrimination when his post criticizing rather than performing the assignment was deleted. Putt's deletion resulted from the off topic "general subject matter" of Collins's post, not a "prohibited perspective." Bronx Household of Faith v. Bd. of Educ. of City of N.Y., 650 F.3d 30, 39 (2d Cir. 2011) (quotation marks omitted).

IV

Collins separately argues that the Defendants failed to follow certain internal policies that related to addressing student misconduct, in violation of his due process rights under the Fourteenth Amendment.  We disagree.

Two days after the removal of his blog post, Collins contacted the provost of Charter Oak State College to complain.  After receiving Collins's complaint, the provost exchanged emails with Collins and offered to fully refund Collins's tuition.  We conclude that Collins was thus afforded a full opportunity to be heard and received sufficient process.  See Goss v. Lopez, 419 U.S. 565, 584 (1975) (students suspended from school were afforded sufficient process when provided opportunity for "informal give-and-take" allowing them "to characterize [their] conduct and put it in what [they] deem[] the proper context"); Rosenfeld v. Ketter, 820 F.2d 38, 40 (2d Cir. 1987) (student's two discussions with university administrators afforded him "the opportunity required by Goss to characterize his conduct, put it in the proper context and urge that [u]niversity rules not be enforced against him").  Collins had no constitutionally protected liberty or property interest in the Defendants' adherence to their own code of conduct.  See Holcomb v. Lykens,

17

337 F.3d 217, 224 (2d Cir. 2003) ("Although state laws may in certain circumstances create a constitutionally protected entitlement to substantive liberty interests, state statutes do not create federally protected due process entitlements to specific state-mandated procedures.").

To the extent Collins's pro se complaint can be liberally construed to raise a substantive due process claim based on an alleged violation of his right to free speech, that claim is subsumed in his First Amendment claim. We have held that "where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." Velez v. Levy, 401 F.3d 75, 94 (2d Cir. 2005). Under such circumstances, a "plaintiff's substantive due process claim is either subsumed in [his] more particularized allegations, or must fail." Id.; see also Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995). For that reason, any discernible substantive due process claim in Collins's complaint fails alongside Collins's more particularized First Amendment censorship claim.

18

## CONCLUSION

We have considered Collins's remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the District Court is **AFFIRMED**.

MENASHI, *Circuit Judge,* concurring in the judgment:

I agree with the court that Collins's post on the electronic message board is subject to the *Hazelwood* standard because it "may fairly be characterized as part of the school curriculum" and was "supervised by faculty members." *Peck ex rel. Peck v. Baldwinsville Cent. Sch. Dist.*, 426 F.3d 617, 628 (2d Cir. 2005) (quoting *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271 (1988)) (emphasis omitted). But restrictions on such speech, "*even if* reasonably related to legitimate pedagogical interests," must be viewpoint neutral. *Id.* at 633.[1]

I disagree with the court's conclusion that Collins has not plausibly alleged that he was the victim of unconstitutional viewpoint discrimination. Collins has plausibly alleged such discrimination and therefore has stated a claim under the First Amendment. I would nevertheless affirm the district court on the ground that Putt is entitled to qualified immunity. *See Leecan v. Lopes*, 893 F.2d 1434, 1439 (2d Cir. 1990) ("[W]e are free to affirm an appealed decision on any ground which finds support in the record, regardless of the ground

---

[1] The court suggests that even under the standard of *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969), a school might permissibly censor a "student's posting of material not responsive to a class assignment" in an online forum. *Ante* at 13 n.4. We have said that "student expression in the context of a class assignment" is subject to the *Hazelwood* standard, *Peck*, 426 F.3d at 627, so I doubt that *Tinker* would apply to such circumstances. But if it did, it is difficult to see how a post in an online forum—such as the one here, which no one was even required to read— could possibly be said to "materially and substantially disrupt the work and discipline of the school" simply because a teacher considers it non-responsive. *Tinker*, 393 U.S. at 513. Surely censorship requires a more substantial justification from the government.

1

upon which the trial court relied."). Accordingly, I concur only in the judgment.

<h1 style="text-align:center">I</h1>

Before turning to the merits, it is worth considering the court's discussion of waiver. In a footnote, the court suggests that "Collins failed to sufficiently develop a viewpoint discrimination argument." *Ante* at 6 n.1. Ordinarily, the court says, it would deem Collins's argument waived. But because of the special solicitude afforded to pro se litigants, the court says it will consider Collins's viewpoint discrimination argument.

To conclude that Collins did not sufficiently develop this argument is to afford him *less* solicitude than a counseled litigant would receive. Under any reasonable standard, Collins adequately raised and developed his argument that Putt engaged in unconstitutional viewpoint discrimination. In his opening brief, Collins clearly articulates his position that Putt censored his post because she was offended by the viewpoint he expressed. Collins argues that:

- The issue in this case is "[w]hether … Appellant's classroom speech was lawfully censored because it offended the Appellee." Brief of Appellant Jeremy Collins ("Collins Br.") 4.

- A professor at a public university cannot "censor student speech because it offends her" or because it "might offend another student" because such "classroom speech is protected by the 1st Amendment." *Id.* at 7.

- Putt "freely admitted to censoring [Collins's] thread, stating in part that 'I will be deleting your

2

post so it does not offend others. It offended me.'"
*Id.*

- Collins "was not accused of doing anything wrong, [but] merely of expressing the wrong ideas, the sort apparently worthy of censure by the government." *Id.* (emphasis omitted).

- "There is no right to be 'unoffended' by the opinions of others … government censure to prevent offense is unconstitutional." *Id.* at 8.

- "Appellee's censorship, undertaken for no other reason than her own personal offense, was [not] a 'legitimate pedagogical concern.'" *Id.* at 10 (quoting *Hazelwood*, 484 U.S. at 273).

- Putt's "pearl clutching … cannot and should not be regarded as a lawful excuse for government censorship absent a showing that the Appellant had violated a law, a rule, or a code of conduct." *Id.*

- Second Circuit precedent "clearly rules out the feeling of being 'offended' as a justifiable reason to take action to curtail student speech" because precedent holds that school officials cannot seek to avoid "[t]he experience of '… discomfort and unpleasantness that always accompany an unpopular viewpoint.'" *Id.* at 11 (quoting *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 112-13 (2d Cir. 2012)).

- His remarks "were protected by the First Amendment," which does not allow a "prohibition against expression of opinion" without a greater justification than was present in this case. *Id.* at 11-12.

Collins further explains his theory of viewpoint discrimination in his reply brief. "The Appellee argues that the actions taken by Appellee were 'viewpoint neutral,' however, the Appellant has clearly shown they were not," he writes. Reply Brief of Appellant Jeremy Collins 8. "Clearly, his viewpoint was the reason for the censorship." *Id.* at 9.

The court's conclusion that Collins failed to develop his viewpoint discrimination argument is irreconcilable with our precedent; we have never held that an argument developed at such length—especially by a pro se litigant—is insufficient to present an issue for appellate review. Rather, we have regarded an argument as waived only when the argument appears in passing or not at all. *See, e.g.*, *United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013) (concluding that the appellant waived an argument because he presented it only "[i]n two footnotes in his briefs to this [c]ourt"); *Tolbert v. Queens Coll.*, 242 F.3d 58, 76 (2d Cir. 2001) (holding an argument was waived because it "appears ... only in a footnote stating the proposition conclusorily in a single sentence"); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("[W]e have concluded that merely incorporating by reference an argument presented to the district court, stating an issue without advancing an argument, or raising an issue for the first time in a reply brief likewise did not suffice."); *Cooper v. Parsky*, 140 F.3d 433, 441 (2d Cir. 1998) ("Any contention that that conclusion was erroneous has been waived on this appeal, for plaintiffs' only mention of [the issue] appears in a footnote in their reply brief."); *United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review.").

The principle running through our waiver precedents is that we will generally decline "to scour the record, research any legal theory that comes to mind, and serve generally as an advocate for [an]

4

appellant." *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 113 f(2d Cir. 1999). Collins does not ask us to do that. Instead, he asks only that we decide the legal issues that he has squarely put before us. Because Collins has discharged his obligation to state his "contentions and reasons for them, with citations to the authorities and parts of the record on which [he] relies," Fed R. App. P. 28(a)(8)(A), we have an obligation to consider those arguments.

## II

The court commits several errors in its analysis of the First Amendment issues in this case. First, the court ignores key allegations in Collins's complaint; second, the court erroneously concludes that Collins conceded Putt censored his post for a viewpoint-neutral reason; and third, the court fails to apply precedent concerning the viewpoint-discriminatory application of facially neutral rules.

## A

In reviewing "a district court's dismissal of a complaint," we must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). To survive a motion to dismiss, a "complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Supreme Court has held that government restrictions on speech constitute unlawful viewpoint discrimination when the speech's "opinion or perspective" is "the rationale for the restriction."

5

*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). When "construed liberally and interpreted 'to raise the strongest arguments that [it] suggest[s],'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), Collins's complaint plausibly alleges that Putt's rationale for censoring Collins's post was that the perspective it advanced was offensive. That is textbook viewpoint discrimination, and therefore Collins has stated a claim for relief.

Collins's complaint contains multiple allegations that state a claim of unconstitutional viewpoint discrimination. Those allegations include the following. In the first week of September 2017, Collins authored a post that, while "includ[ing] what might be reasonably called a critique of the assignment and materials themselves ... was not off-topic given the assignment instructions." App'x 26. His post "clearly fulfilled all the requirements for the assignment." *Id*. at 28. Because "[e]xamining perception was the entire point of the assignment," Collins was permitted "to voice his own perceptions and viewpoints, even if they [were] not in complete accord with [his] college instructor's." *Id*. at 26. On September 6, 2017, Putt sent Collins an email in which she explained that she would be deleting his post. *Id*. at 29. Putt said she was deleting Collins's post because it offended her and would offend other students, and indeed "Putt censored [Collins] because his viewpoint was contrary to her own." *Id*. at 31. "Putt's actions were ... designed to ... enforce some sort of orthodoxy," one which forces students "to err on the side of pure dogmatic adherence to ... Putt's own presumed viewpoint." *Id*.

Because these allegations give rise to a reasonable inference that Putt censored Collins because she found his views offensive, Collins has stated a claim under the First Amendment. *See FCC v. Pacifica Found.*, 438 U.S. 726, 745 (1978) ("[T]he fact that society may find speech offensive is not a sufficient reason for suppressing it.");

*Robinson v. Hunt Cty.*, 921 F.3d 440, 447 (5th Cir. 2019) ("Official censorship based on a state actor's subjective judgment that the content of protected speech is offensive or inappropriate is viewpoint discrimination."); *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 82 (1st Cir. 2004) ("The bedrock principle of viewpoint neutrality demands that the state not suppress speech where the real rationale for the restriction is disagreement with the ... perspective that the speech expresses.").

The court insists that Putt's "deletion of Collins's post reflected a content-based restriction that the Supreme Court has instructed us to tolerate in the school setting"—namely, a restriction on student posts that are off-topic. *Ante* at 13. The court's principal factual support for that conclusion is Putt's email in which she purportedly characterizes Collins's post "as a 'rant' targeted at the adequacy of the 'classroom materials' rather than the assigned evaluation of the perception of the video's characters." *Id.* at 14. Read as a whole, however, Putt's email undermines the court's conclusion. The email states:

> This class is designed as an entry level course for all levels of ability. And age. While I don't mind a bit of humor here and there, ranting about the classroom materials in a manner that some might find offensive will not be tolerated. You are welcome to find a clip that illustrates ageism, ableism, automatic processing, heuristics, perception, selective perception, under certainty reduction and social construction of self. Please be sure to include self-concept, self monitoring and self esteem. Perhaps I will use it next semester. That being said, I worked in an elder care facility for five years. I have seen conversations that were very similar to this play out countless times. *I will be deleting your post so it does not offend others. It offended me.* You will be given full

credit for your response; it just will be copied into a Word document. In the future, please be more considerate of your posts. You might be posting in jest, however, not everyone will take it that way.

App'x 29 (emphasis added). The court contends that, even after drawing all reasonable inferences in Collins's favor, this email admits of no other interpretation than that Putt deleted Collins's post for a viewpoint-neutral reason. That is wrong. While Putt wrote that Collins was "ranting about the classroom materials," she did not say that his post would be removed because it was off-topic. She objected to "ranting about the classroom materials *in a manner that some might find offensive*"—in particular, elder members of the class who would view Collins's comments as insensitive to the elderly. Putt expressly stated that she would delete Collins's post "so it does not offend others."

Because censoring the views of some to prevent offense to others is viewpoint discrimination, Collins has stated a claim. S*ee Iancu v. Brunetti*, 139 S. Ct. 2294, 2301 (2019) ("[A] law disfavoring 'ideas that offend' discriminates based on viewpoint, in violation of the First Amendment."); *Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017) ("[I]n the sense relevant here, that is viewpoint discrimination: Giving offense is a viewpoint.").

Moreover, Putt made clear that she herself was "offended" by Collins's post, and she said she disagreed with Collins's viewpoint because, in her experience, the video was realistic. App'x 29 ("I worked in an elder care facility for five years. I have seen conversations that were very similar to this play out countless times."). While the court might think that Putt was profoundly offended by the mere sight of off-topic commentary—rather than by comments she viewed as offensive to the elderly—that interpretation

8

is inconsistent with the text of the email and with the fact that Putt gave Collins "full credit for [his] response," indicating that she considered it responsive to the assignment. *Id*. The most natural reading of the email—and, at a minimum, a permissible one—is that Putt was "offended" because Collins disagreed with her about the realism of the materials and advanced a perspective she saw as insensitive to the elderly. That interpretation is the only one that makes sense of Putt's references to her own experience in elder care facilities, to the presence of students of any "age" in the class, and to the alleged offensiveness of Collins's post rather than any statement that it was off-topic.

The court emphasizes that Putt wrote in her email that the "manner" of Collins's expression was offensive, *ante* at 6 n.1, and it concludes that Collins "was discriminated against … for the manner in which he expressed himself" rather than "for a viewpoint expressed in his post," *id.* at 15. But Collins expressed his views in the same manner as every other student in the class: he wrote a post on an online message board. When Putt condemned the "manner" of Collins's expression, she was objecting not to his mode of communication but to the substance of his speech: the words he chose to write and the tone of his comments—that is, his viewpoint. When courts have upheld the government's authority to regulate the "manner" in which individuals speak, that authority has allowed the government to regulate the method of conveying a message, not the message itself. *See, e.g., Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294 (1984) (holding that a ban on sleeping overnight in a park was a permissible "limitation on the manner of demonstrating"); *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 803 (1984) (holding that a ban on posting signs on public property could permissibly prevent speakers "from communicating with the public

in a certain manner"); *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) (explaining that whether a regulation of the manner of expression is reasonable depends on "whether the manner of expression," such as holding a "silent vigil" or making a "speech," is "basically incompatible with the normal activity of a particular place at a particular time").

The government may sometimes regulate the "manner" of speech by specifying that certain types of communication must take place in certain locations. But it would not be a reasonable regulation of time, place, or manner for the government to prohibit certain words or to require a certain tone. Yet, in this case, the court holds that the government may censor speech when it determines the speaker has communicated in an "offensive" "manner." *Ante* at 6 n.1, 15.

That view has no support in precedent. The Supreme Court has said that a prohibition on offensive speech "is viewpoint discrimination" because "[g]iving offense is a viewpoint." *Tam*, 137 S. Ct. at 1763. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). The First Amendment guarantees a "freedom to be intellectually ... diverse or even contrary" and to express "opinions which are defiant or contemptuous" regarding matters that "touch the heart of the existing order," let alone opinions that are critical of classroom materials. *Id.* (quoting *Street v. New York*, 394 U.S. 576, 593 (1969)).

In this case, a state actor assigned students to read certain materials, and she censored student speech she deemed insufficiently respectful of and deferential toward those materials. She did so because she found such criticism "offensive" and she disagreed with

the critique. The court decides that such viewpoint-based censorship is permissible. Indeed, it decides that such censorship is so obviously permissible that Collins's complaint can be dismissed on a threshold motion under Rule 12(b)(6). That decision conflicts with the First Amendment's requirement that "[t]he government must abstain from regulating speech when the … perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829.

When a government official censors speech because of disagreement with its perspective, that official violates the First Amendment. In fact, the "principal inquiry" in determining whether the government has engaged in viewpoint discrimination "is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Because Collins has plausibly alleged that Putt censored his post because of disagreement with the message it conveyed, Collins has stated a claim.

**B**

In addition to ignoring the complaint's most relevant allegations, the court insists that Collins effectively conceded that his post was off-topic and that Putt deleted it for that reason. That is incorrect. "[F]or a statement to constitute a judicial admission" that is binding upon a party, "it must not only be a formal statement of fact but must also be intentional, clear, and unambiguous." *In re Motors Liquidation Co.*, 957 F.3d 357, 361 (2d Cir. 2020). That high standard ought to be particularly exacting when applied to the pleadings of a pro se litigant. *See Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (stating that, in evaluating a pro se plaintiff's submissions, we must "make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal

training"). Collins did not concede either that his post was off-topic or that Putt censored it for that reason—and he certainly did not do so intentionally, clearly, and unambiguously.

The first purported concession the court identifies is that "Collins himself alleged [that] his post critiqued the assignments and materials themselves which was not the assignment." *Ante* at 11 (internal quotation marks, citation, and alterations omitted) (citing App'x 26). Here is the full paragraph from which the court selectively quotes:

> Plaintiff made his first post for the aforementioned assignment on or around the first week of September 2017. Plaintiff's fi[r]st post was intentionally humorous, ironic and provocative. It included what might be reasonably called a critique of the assignment and materials themselves, however, *Plaintiff was not off-topic given the assignment instructions.*

App'x 26 (emphasis added). This paragraph does not constitute an intentional, clear, and unambiguous admission that Collins's post was off-topic or that Putt deleted it for that reason. It is exactly the opposite. Collins is explaining that his critique of the assignment and materials *did not render the post off-topic.* He says so directly: "Plaintiff was not off-topic given the assignment instructions."[2] For the court to

---

[2] The court dismisses Collins's repeated allegations that he was not off-topic as "conclusory" and therefore not entitled to an assumption of truth. *Ante* at 12. Collins's allegations are not conclusory. An allegation is conclusory when it is a "bare assertion[]" that "amount[s] to nothing more than a 'formulaic recitation of the elements'" of a claim divorced from sufficient "factual content" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 681. Collins's allegation that his post "was not off-topic given the assignment instructions" is not this sort of allegation. It is not "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

read this passage to mean the opposite of what it says—and then to suggest it is an unambiguous and binding admission of the case against a pro se plaintiff—is perverse. This paragraph provides no support for the court's position.[3]

The second purported concession is that Collins acknowledged that his post "was unresponsive to the class assignment" because he said that Putt's "true reason" for censoring him was his "ranting about the classroom materials." *Ante* at 14. The court once again mischaracterizes Collins's allegations. The full paragraph from which the court quotes reads as follows:

> Defendant Putt's actions were deliberate, malicious, obviously unlawful, designed to intimidate and enforce some sort of orthodoxy, and contained an implied accusation that Plaintiff was attacking old people or the disabled in order to distract from the true reason Defendant Putt censored the Plaintiff, i.e. his "ranting" about the classroom materials, something other students were very unlikely to find "offensive."

Rather, it is a factual allegation about the nature of the assignment and Collins's responsive post. And, more importantly, it does not lack factual support. Collins's complaint provides the full text of the assignment and of Collins's post. It is hard to imagine what more "factual content" Collins could possibly provide to support an allegation that his post was responsive to the assignment when he has provided both the post and the assignment. The court can evaluate the plausibility of Collins's claim by examining the well-supported factual allegations in his complaint. It is obligated to do so rather than to ignore those allegations as "conclusory."

[3] The court relies on this passage a second time to argue that Collins's statement that the post "included what might reasonably be called a critique of the assignment and materials themselves" constitutes a concession that his post was off-topic. *Ante* at 14. The court again ignores the second half of the sentence—let alone Collins's repeated allegation that he was on-topic.

App'x 31-32. This paragraph is also not an intentional, clear, and unambiguous concession that Putt censored Collins's post because it was off-topic. First, Collins puts the term "ranting" in quotation marks, indicating that he is repeating Putt's characterization of his comments, not adopting that position himself. Second, Collins's description of Putt's motivation is inconsistent with the court's interpretation. Far from conceding that Putt censored his post because it was off-topic, Collins alleges that "Putt's actions were … designed to … enforce some sort of orthodoxy," one in which students were not at liberty to disagree with Putt's views. That is the essence of a viewpoint discrimination claim. It is difficult to imagine language that would more clearly express Collins's position that Putt was motivated by disagreement with Collins's viewpoint. And yet the court somehow reads this passage—in which Collins accuses Putt of enforcing a prescribed "orthodoxy"—as a concession that Putt deleted his post for a viewpoint-neutral reason.

The third purported concession is that, because Collins used the common phrase "I digress" in his post, he was conceding that his post was off-topic. *Ante* at 14 (citing App'x 41). Here is the prompt to which Collins responded: "How does this dialogue demonstrate how personal perceptions can be out of touch with reality? What are some moments where we hear the characters recognize their flawed perceptions? How do these two men reach a compromise of perceptions?" App'x 41. And here is Collins's answer:[4]

> This excruciatingly awkward video in which two complete idiots have a conversation that could only take place in an alternate reality on a planet far, far away is, I

---

[4] The answer includes parenthetical references to the assigned reading material. It also includes a link at the end as well as a full reference to the assigned reading material, both of which are omitted here. *See* App'x 41.

suppose, intended to demonstrate that both parties['] expectations (Verderber, pg. 17) are not in line with reality and that their respective impression formation (Verderber, pg[.] 25) of facts led them to a dispositional attribution [of] motives to the other that probably don't exist. Both characters acknowledge that they may have misjudged the other when, for instance, the young "artist" realizes he did not take into account the differently abled community when placing his photographs on the wall and the cranky old man feels equally validated by the personal story the young artist tells of being introduced to photography by another member of the "greatest generation[.]" Once the young "artist" realizes the cranky, self pitying old man with nothing better to do than be offended and angry at life is not going away he agrees to treat him like a little baby and escort him around the exhibition where he will receive the personal care and attention he should probably be getting from his family, friends, or staff had he not already driven them away with his miserable griping. But I digress. All kidding aside it is very difficult to not be distracted by this ridiculous scenario and its conclusion. It is patently obvious that both of these people should have ignored each other and gone about their business instead of attempting to reach some sort of mystical understanding. Either that or just had a polite, non-accusatory conversation. A society based on the modeled behavior of confrontation/resolution is doomed and brain dead. As for the video I have no idea what it was trying to prove or what was proved. I focused on the task and counted 19 exclamation points. What, precisely, is the hypothesis being tested in this "experiment"? I would love to know. Also, Bob Dylan did it way, way better a long, long time ago... Did you notice Allen Ginsberg in the b.g.? What did Bob Dylan prove with this experiment?

*Id.* The court's position is that Collins's use of the phrase "[b]ut I digress" constituted an admission that his post was off-topic. But the court once again misconstrues Collins's allegations. The most natural reading of Collins's remark is that he acknowledged that his single-sentence comment on the causes of one character's isolation—that the old man had driven away his family with his persistent griping—constituted a digression from his earlier, indisputably topical point: explaining how the characters "recognize[d] their flawed perceptions"—the old man by seeing that the artist has respect for the elderly and the young artist by realizing that he did not properly appreciate the struggles of being elderly or disabled—and "reach[ed] a compromise of perceptions" when the young artist escorted the elderly man around the art gallery. Because Collins's use of the phrase "I digress" does not constitute an intentional, clear, and unambiguous admission of fact, it does not establish that his post was off-topic.

Put simply, the court's attempt to find a fatal concession in Collins's allegations is unavailing. None of the statements is sufficiently intentional, clear, and unambiguous to constitute a binding judicial admission. In fact, if one reads the full passages on which the court relies, it becomes clear that Collins made no such concession. In any event, our obligation to afford Collins all reasonable inferences requires us to interpret these allegations to support his argument.[5]

---

[5] I do not believe that whether Collins's response to the assignment was "off-topic" is as important to the resolution of this case as the court evidently does. As I explain in Part II.C., the government may not discriminate on the basis of viewpoint even if that viewpoint is "off-topic." Still, Collins's allegation that his post was responsive to the assignment is plausible. The assignment asks, "How does this dialogue demonstrate how personal perceptions can be out of touch with reality?" A student might reasonably respond, as Collins did, by saying that the dialogue attempted

## C

There is an even more fundamental—and worrying—flaw in the court's analysis. The court appears to assume that the responsiveness of Collins's post to the assignment is dispositive of his viewpoint discrimination claim. In other words, the court suggests that if Collins's post were off-topic, the government would be free to censor it. That premise is inconsistent with Supreme Court and Second Circuit precedent.

We have recognized that a public official engages in viewpoint discrimination when that official applies a facially viewpoint-neutral rule in a viewpoint-discriminatory way. *See Peck*, 426 F.3d at 632-33. We have also said that a plaintiff states a claim for viewpoint discrimination when he or she plausibly alleges that the official was "particularly disposed to censor" the plaintiff's speech for viewpoint-discriminatory reasons even if the official invoked a viewpoint-neutral rationale. *Id.* at 631. The Supreme Court has made clear that actions motivated by impermissible viewpoint considerations do not become lawful simply because those actions might be justified on some other viewpoint-neutral ground. *See Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 811 (1985) (explaining that "[t]he existence of reasonable grounds" for a regulation of speech "will not save a regulation that is in reality a facade for viewpoint-based

---

to illustrate a certain lesson regarding personal perceptions but the attempt was undermined by the dialogue's lack of realism. The conclusion that his post was on-topic finds further support in the facts that Collins received "full credit" for his response, App'x 29, and that other students, according to the court, also "expressed negative views of the portrayal" of the dialogue, *ante* at 15. On a motion to dismiss, the court should not construe the assignment instructions to render the plaintiff's response "off-topic" when the facts could reasonably be construed to reach the opposite conclusion.

discrimination"); *see also Turning Point USA v. Rhodes*, 973 F.3d 868, 881 (8th Cir. 2020) (Loken, J., concurring) ("In the modern university, it is all too common for *petits fonctionnaires*, arbitrarily enforcing broad rules and policies, to take action that may be politically correct but is not viewpoint neutral. When such actions trample a student's constitutionally protected right of free speech, those responsible should be held accountable.").

Though the court acknowledges these principles by remarking that "[i]t is true that even content- and style-based restrictions on speech must be imposed evenhandedly, without regard to viewpoint," *ante* at 15, the court makes no serious attempt to explain why Collins has not plausibly alleged that Putt was "particularly disposed" to censor posts she found offensive. In an oblique reference to the issue, the court argues that, because Collins conceded that other posts that critiqued the assignment were not deleted, he cannot plausibly allege that it was his critique—as opposed to concerns about responsiveness—that motivated Putt's deletion of his post.

Here, the court impermissibly makes factual inferences that favor the defendants. Earlier in its opinion, the court dismisses as "conclusory" all of Collins's allegations about his post being responsive to the assignment—even though Collins's factual allegations included the full text of his post and of the assignment. *See supra* note 2. But in this part of its opinion, the court latches onto an allegation that indicates that other students' posts also critiqued the classroom materials. Even though there are no copies of these posts in the record—and we therefore do not know what the posts said or how the posts compare to Collins's—the court regards *this* allegation

as decisive.[6] It does not believe the lack of "factual content" renders this allegation conclusory because it is willing to infer facts not alleged or otherwise in the record. *But see Iqbal*, 556 U.S. at 678.

Yet given that the actual posts are not in the record, we have only Collins's allegation. According to his allegation, the other students' posts expressed a *different* viewpoint than his. Here is the relevant paragraph of Collins's complaint:

> Plaintiff specifically took issue with the stereotypical portrayal of a disabled character in the video and by means of an expository backstory attempted to frame the disabled character's noxious personality as independent of his disability and not caused by it. Plaintiff's rhetorical device ascribed to the fictional character, a fictional explanation for his otherwise inexplicably rude, thoughtless and stupid behavior towards the other character. By doing so Plaintiff intended to draw attention to the fact that there was an implicit expectation to perceive the disabled character's rude, obnoxious behavior as unquestionably acceptable merely because he is disabled. *Many other student's responses included similar though more guarded appraisals of the disabled character*.

App'x 27 (italics omitted and emphasis added). Collins is apparently "sensitive" to "stereotypical depictions of disabled people" because he suffers from "health issues" that include "very limited mobility." *Id.* (Compl. ¶ 20). Whatever his motivation, Collins's allegation

---

[6] *See ante* at 15 (noting that "Putt did not remove other posts that expressed negative views of the portrayal of the disabled person in the assigned video" and concluding "That Putt did not delete the 'more guarded' student posts belies Collins's claim that he was discriminated against for a viewpoint expressed in his post rather than for the manner in which he expressed himself").

explained that while other students appeared to sympathize with his perspective—as least as it pertained to the depiction of the disabled character—their posts were substantively different. Collins elaborated at oral argument: "I think my comment was targeted because I went into more depth and made more arguments than other students did. They made passing comments about it and I actually took up the idea that these materials did not adequately express the course intent or the course topics and concepts."[7] In other words, he alleges that he directly expressed a viewpoint to which Putt objected while other students made only passing comments.

The court reads Collins's allegation to mean the opposite of what it says. Whereas he *distinguished* the viewpoint of his post from those of other students in the class, the court concludes that those other posts must have expressed the *same* viewpoint. How does the court know this? It is pure conjecture, given that the posts are not alleged in the complaint or otherwise in the record. Nevertheless, the court regards this imaginary evidence as so compelling that it allows Collins's complaint to be rejected on a motion to dismiss. The "other posts' criticisms," the court explains, describing evidence it has never seen, "focused on the perceptions of the video's characters and were thus reasonably responsive to the assignment." *Ante* at 15. This hypothetical evidence, the court imagines, shows that the school's censorship really was about responsiveness rather than viewpoint.

It should go without saying that, on a motion to dismiss—of a pro se plaintiff's complaint, no less—the court should not make inferences about the plaintiff's factual allegations that favor the defendants. Yet that is exactly what the court does in this case. Collins alleges that other students wrote posts that were notably *different* than

---

[7] Oral Argument Audio Recording at 13:08 to 13:25.

his own, and the court takes that allegation to mean that Collins's viewpoint was shared and expressed by other students not subject to censorship. There are no allegations or evidence before the court—aside from the court's own speculation—to suggest this.

Besides its incompatibility with Rule 12(b)(6), there are at least three other flaws in the court's analysis worthy of note. First, if other students responded to the assignment with a critique of the classroom materials, then it is harder to assume without any analysis—as the court does—that Collins's post was non-responsive simply because it included such a critique. Why was his critique singled out as non-responsive? If the other students' critiques were materially different than Collins's so that he could be singled out, then the court cannot say that the lack of censorship of those critiques belies Collins's allegations of viewpoint discrimination.

Second, even if Collins's viewpoint about "the portrayal of the disabled person in the assigned video" were widely expressed across student posts—which I doubt—it would not undermine Collins's central allegations of viewpoint discrimination. *Ante* at 15. In her email explaining her censorship of Collins's post, Putt did not refer to the disabled character but said she was censoring the post because she believed it was offensive to the elderly and because she disagreed with Collins's argument that the classroom materials were unrealistic.

Third, nothing in our precedents requires that a plaintiff demonstrate that the government availed itself of every opportunity to engage in unconstitutional censorship. The court appears to assume that if other posts expressed views similar to Collins's and were not censored, that would doom Collins's complaint. But it is just as unconstitutional to discriminate against one speaker's views as it is to discriminate against the views of multiple speakers. And it is

21

possible plausibly to allege that the government discriminated on the basis of viewpoint against one plaintiff even if the government could have but did not discriminate against others as well.

On a motion to dismiss, the court should not make inferences in the defendants' favor. We must construe Collins's complaint liberally and afford him the benefit of factual inferences. Applying that standard, I would conclude that Collins plausibly alleges that Putt treated his post differently from other students' posts because she thought Collins's post was offensive and expressed a view with which she disagreed.

**D**

"At a time when free speech is under attack, it is especially important for this Court to remain firm on the principle that the First Amendment does not tolerate viewpoint discrimination." *Iancu*, 139 S. Ct. at 2302-03 (Alito, J., concurring). "[U]nder our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." *Street*, 394 U.S. at 592. By persistently mischaracterizing Collins's complaint, by making factual inferences that favor the government, and by failing rigorously to adhere to our precedent, the court does a disservice to the important First Amendment principles at stake. For those reasons, I do not join its opinion.

**III**

In addition to his First Amendment claim, Collins alleges that the defendants violated his right to due process under the Fourteenth Amendment. To state a claim under the Due Process Clause, a plaintiff must allege that the government deprived the plaintiff of "a protected liberty or property interest" without adequate process. *Sealed v. Sealed*, 332 F.3d 51, 55 (2d Cir. 2003).

22

Collins argues that Putt's censorship of his post "was based on the imposition of a vague, inarticulable standard explained only as that which personally offended her and might offend others." Collins Br. 12 (emphasis omitted). He further notes that his being censored without being afforded due process "is cognizable under 42 U.S.C. § 1983 as a substantive violation of Due Process that impinges on fundamental liberty" because his "right to free speech, established and codified in the First Amendment, was subjected to an unfair and arbitrary act of government power without Due Process" by the defendants. *Id.*

In other words, Collins argues that the defendants violated his rights to procedural and substantive due process by violating his First Amendment right to free speech without following a proper standard to justify the invasion of his right and, ultimately, while lacking a sufficient justification. Because Collins's asserted liberty interest is the right to free speech guaranteed by the First Amendment, his due process claim should be assessed according to the standards applicable to government regulation of speech. *See Bauer v. Montgomery*, 215 F.3d 656, 661-62 (6th Cir. 2000) (noting that the viability of a due process claim premised on the denial of First Amendment interests depends on whether the plaintiff "has stated a First Amendment claim"); *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision ... the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."); *Southerland v. City of New York*, 680 F.3d 127, 142-43 (2d Cir. 2012) ("Where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due

process.") (quoting *Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000)).

In this case, therefore, Collins's due process allegations "are subsumed by [his] more particular allegations" of a violation of the First Amendment. *Hu v. City of New York*, 927 F.3d 81, 104 (2d Cir. 2019); *accord Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) (noting that a "plaintiff's substantive due process claim is either subsumed in her more particularized allegations, or must fail"). When a due process claim is "duplicative" of a more specific constitutional claim, our court's practice is to dismiss the due process claim. *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1351 n.8 (2d Cir. 1994); *accord Hu*, 927 F.3d at 104; *Velez*, 401 F.3d at 94; *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995).[8] Accordingly, I would "affirm the [d]istrict [c]ourt's dismissal of the [due process] claim on different grounds, concluding that this claim must be analyzed under the [First Amendment]." *Hu*, 927 F.3d at 104.

---

[8] Prior cases have focused on claims of substantive due process. Collins does not clearly distinguish between the substantive and procedural components of his claim. Yet to the extent Collins alleges procedural aspects of a due process violation, such as Putt's reliance on a vague standard of offensiveness, those allegations also duplicate his First Amendment claim because the First Amendment more specifically prohibits state actors from censoring speech based on a standard of offensiveness. *See, e.g.*, *Tam*, 137 S. Ct. at 1763. Collins also suggests that, apart from his First Amendment interest in free speech, he had a cognizable liberty or property interest in the school's use of the processes enumerated in its code of conduct. Yet "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). Accordingly, we have held that "the fact that a state has established procedures to be followed does not mean it has created a protectable liberty interest" in those procedures. *Rodriguez v. McLoughlin*, 214 F.3d 328, 339 (2d Cir. 2000).

## IV

Despite my disagreement with the court about the plausibility of Collins's claim of viewpoint discrimination, I ultimately agree that Collins's suit should be dismissed. A defendant is subject to suit under 42 U.S.C. § 1983 only when that defendant has violated a right so clearly established that every "reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Although Collins is not required to provide "a case directly on point, existing precedent must have placed the … constitutional question beyond debate" and not have done so at too "high [a] level of generality*." Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011); *see also Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) ("[A]n officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context."). Here, reasonable state actors could disagree about the legality of Putt's actions because Collins's expression occurred in a forum that is materially different from those at issue in prior cases.

The forum here differs from those in prior cases because of its inward-facing and interactive nature. *Hazelwood* concerned a newspaper that was widely distributed; "[m]ore than 4,500 copies of the newspaper were distributed during that year to students, school personnel, and members of the community." 484 U.S. at 262. In *Peck*, the school censored a poster which was to be "displayed at [an] assembly" to which "parents of the students were invited." 426 F.3d at 621. Here, by contrast, the discussion board was meant only for an in-class audience. And unlike *Hazelwood* and *Peck*—in which those exposed to the censored material could ignore it—here Collins's audience of fellow students was expected to comment on the posts, though not necessarily on his. *See* App'x 25-26. These facts suggest

that a professor might have reasonably believed that online posts were a continuation of classroom lectures and discussion that the professor could regulate more than student expression in a more traditional forum in which speech is directed to an outside audience.

Because the forum at issue here differs from those in past viewpoint discrimination cases in this circuit, I would hold that Putt is entitled to qualified immunity and affirm the judgment of the district court.

## CONCLUSION

In sum, the court's opinion misapplies precedent concerning the interpretation of pro se complaints, the judicial admission doctrine, and First Amendment principles prohibiting viewpoint discrimination by state actors. For these reasons, I decline to join the court's opinion. But because Putt is entitled to qualified immunity, I concur in the judgment.