23-7232-cv
*Kristoffersson v. Port Jefferson Union Free Sch. Dist.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of July, two thousand twenty-four.

PRESENT:    Reena Raggi,
            Steven J. Menashi,
            Alison J. Nathan,
                    *Circuit Judges.*

_____

MADELEINE KRISTOFFERSSON, on behalf of R.R., an infant, as her natural mother and guardian,

      *Plaintiff-Appellant*,

    v.                                                         No. 23-7232-cv

PORT JEFFERSON UNION FREE SCHOOL DISTRICT, ERIC HARUTHUNIAN, High School Principal, JESSICA SCHMETTAN, Superintendent, and MATTHEW SEFICK,

      *Defendants-Appellees*.

_____

*For Plaintiff-Appellant*:  JOHN RAY, John Ray & Associates, Miller Place, New York.

*For Defendants-Appellees*:  CHELSEA WEISBORD (Adam I. Kleinberg, *on the brief*), Sokoloff Stern LLP, Carle Place, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Azrack, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

The plaintiff in this case, Madeleine Kristoffersson, is the natural mother and guardian of R.R., who was a Port Jefferson high school student at all times relevant to this case. In April 2021, R.R. wrote a sonnet about the killing of George Floyd and submitted it for publication in her high school's literary magazine. The school refused to publish the sonnet, and Kristoffersson brought this lawsuit against the school district, the school principal, the district superintendent, and the literary magazine's faculty advisor, claiming that the school's decision violated R.R.'s rights under the First and Fourteenth Amendments as well as under the constitution and statutes of New York. The district court granted the defendants' motion to dismiss, holding that R.R.'s First Amendment rights were not violated under the standards of *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1988), and that her Fourteenth Amendment claims coalesced with her First Amendment claim and therefore failed for the same reason. Kristoffersson did not request—and the district court did not grant—leave to amend the complaint. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

2

# I

R.R. was a student at Earl L. Vandermeulen High School in Port Jefferson, New York, which is part of the Port Jefferson Union Free School District. Defendants Eric Haruthunian and Jessica Schmettan were the school principal and district superintendent, respectively, and defendant Matthew Sefick was an English teacher and the faculty advisor for the school's literary magazine, *The Mast*. *The Mast* was published twice per school year and featured short stories and poems written by students at the school. *The Mast* was edited by students and overseen by the faculty advisor, principal, and superintendent.

In April 2021, shortly after a jury found Derek Chauvin guilty of Floyd's murder, R.R. wrote a sonnet in iambic pentameter with the title "Derek Chauvin's Ode to George Floyd: A Dark Sonnet." According to the complaint, the sonnet was intended to "reflect the contemptuous racial hatred demonstrated by a white figure of authority for a helpless African American," "capture the deeply bred racially motivated cause of the death of George Floyd," and "convey the intense reason for the nation-wide reaction to Chauvin's murder of George Floyd." App'x 37.

The complaint alleges that "[t]he Defendants acknowledged that the sonnet was very well-written" but "forbade the editors of *The Mast* to publish the sonnet." *Id.* When R.R. protested, the defendants explained that they decided not to publish the sonnet because it would "create adverse emotional reactions and strife in the Port Jefferson community, amongst students and faculty, due to the sonnet's allegedly controversial content." *Id.* at 37-38. Kristoffersson, however, claims that the defendants "prevented and forbade the publication of R.R.'s sonnet and sonnet title in order to suppress [her] freedom of speech and of expression," and in particular to prevent her from advocating on behalf of African Americans. *Id.* at 39. She also claims that the defendants "believed the views expressed in the aforesaid sonnet would be controversial and unpopular due to the sympathy expressed therein for African American victims of white racism." *Id.* at 39-40.

3

According to the complaint, in 2021, nearly 80 percent of the school and the Port Jefferson community was white, and no more than 1 percent was African American.

After the sonnet was denied publication, Kristoffersson filed this lawsuit on behalf of R.R. The complaint asserted § 1983 claims for violations of the First and Fourteenth Amendments, as well as violations of the New York State Constitution and the New York State Human Rights Law ("NYSHRL"), and sought damages of $2 million as well as punitive damages and attorney's fees.[1] The defendants moved to dismiss the complaint for failure to state a claim, and in her opposition to the defendants' motion, Kristoffersson cross-moved for partial summary judgment and "submitted a 25-page affidavit by R.R., along with 21 exhibits, which include … past issues of *The Mast*; emails among R.R., student editors, and Defendants regarding her poem; and 50-h examination transcripts." *Kristoffersson on behalf of R.R. v. Port Jefferson Union Free Sch. Dist.*, No. 22-CV-1741, 2023 WL 6119710, at *3 (E.D.N.Y. Sept. 18, 2023) (citation omitted). The defendants submitted their own affidavits, exhibits, and testimony in response.

The district court declined to convert the defendants' motion to dismiss into a motion for summary judgment, and it therefore did not consider materials extraneous to the complaint that the parties submitted. The district court then granted the defendants' motion to dismiss for failure to state a claim and denied Kristoffersson's cross-motion for partial summary judgment as moot. The district court noted that even if Kristoffersson's motion had not been moot, it would have been denied because Kristoffersson failed to submit a timely Rule 56.1 statement.

## II

"We review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 147

---

[1] Kristoffersson does not challenge the dismissal of her claims under state law.

(2d Cir. 2021) (quoting *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021)). "The Court must examine the complaint for 'facial plausibility,' considering whether the 'factual content' 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Although we generally review denials of leave to amend for abuse of discretion, in cases in which the denial is based on futility, we review *de novo* that legal conclusion." *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021).

### III

Initially, we address the district court's decision not to convert the defendants' motion to dismiss into a motion for summary judgment. After concluding that the district court properly exercised its discretion, we turn to the merits of Kristoffersson's claims. First, we hold that the defendants did not engage in viewpoint discrimination and that their decision not to publish R.R.'s sonnet was permissible under *Hazelwood*. Second, we hold that the Fourteenth Amendment claims coalesce with the First Amendment claim and for that reason fail as well. Third, we conclude that the district court did not err by failing to grant leave to amend the complaint.

### A

Kristoffersson argues that the district court erred in refusing to convert the defendants' motion to dismiss into a motion for summary judgment, which would have allowed the district court to consider the affidavit and exhibits she submitted in response to the motion to dismiss.

The Federal Rules of Civil Procedure provide that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to *and not excluded by* the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d) (emphasis added). "As the language of the rule suggests, *federal courts have complete discretion* to determine whether or not to accept the submission of any material beyond the pleadings that is offered in

conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion [to a motion under Rule 56], or to reject it or simply not consider it." 5C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1366 (3d ed.) (emphasis added); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) ("Once the District Court was presented with matters outside the pleadings, Rule 12(b) afforded two options. The court could have excluded the extrinsic documents. Because it elected not to do so, however, the court was obligated to covert the motion to one for summary judgment.").

In exercising that discretion, a district court typically considers "whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action." Wright, Miller & Kane, *supra*, § 1366. "[R]eversal for lack of conversion is not required unless there is reason to believe that the extrinsic evidence actually affected the district court's decision and thus was not at least implicitly excluded." *Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999); *see McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 609 (2d Cir. 2024) (holding that, because the district court "did not consider matters outside of the pleadings in deciding the Rule 12(c) motion … it was not required to convert the motion into one for summary judgment").

In this case, the district court expressly stated that it would not consider the extrinsic materials the parties submitted. Kristoffersson has not offered any reason to believe that the extrinsic materials the defendants submitted affected the district court's decision. We therefore conclude that the district court did not abuse its discretion in declining to convert the defendants' motion to dismiss into a motion for summary judgment.

**B**

The parties dispute whether the First Amendment claim is governed by *Hazelwood* or the stricter standard set forth in *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969). *See Collins v. Putt*, 979 F.3d 128, 132 (2d Cir. 2020) (noting that *Tinker* is "more protective of student speech than

6

*Hazelwood*"). Under either standard, however, a public school violates the First Amendment if it engages in viewpoint discrimination—that is, "[d]iscrimination against speech because of its message." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). "[A] manifestly viewpoint-discriminatory restriction on school-sponsored speech is, prima facie, unconstitutional, *even if* reasonably related to legitimate pedagogical interests." *Peck ex rel. Peck v. Baldwinsville Cent. Sch. Dist.*, 426 F.3d 617, 633 (2d Cir. 2005). By contrast, a viewpoint-neutral restriction on "the style and content of student speech in school-sponsored expressive activities" is permissible under *Hazelwood* provided it is "reasonably related to legitimate pedagogical concerns." *Hazelwood*, 484 U.S. at 273.

The district court held that Kristoffersson failed plausibly to allege that the defendants discriminated against R.R. because of the viewpoint expressed in her sonnet. We agree. Kristoffersson argues that the district court erred in concluding that the defendants' refusal to publish was viewpoint neutral because "the sonnet is indubitably an expression of Appellant's opinion and perspective as to the historic event." Appellant's Br. 22. The inquiry focuses not on whether the speech at issue expressed a viewpoint, however, but on whether it was regulated *because* of that viewpoint. Kristoffersson's complaint fails plausibly to allege that it was. The complaint asserts that the defendants told R.R. that they would not publish the sonnet in *The Mast* because they thought it would "create adverse emotional reactions and strife" within the school community. App'x 37. But it fails to include factual allegations plausibly connecting the school's expressed concern with the viewpoint of the sonnet as opposed to its topic and tone. *See Collins*, 979 F.3d at 135 (noting that school officials have not "regulated in a viewpoint discriminatory manner" when their actions were "based on the content and style" of a student's speech rather than "the particular viewpoint expressed"). For example, the complaint alleges that "other students' poems were published" in *The Mast*, App'x 41, but it nowhere describes the subjects of those published poems or the viewpoints expressed. Without that description, the mere

7

fact of the poems' publication fails to raise a plausible inference that the decision not to publish R.R.'s poem was viewpoint-based.

The complaint also alleges that the defendants refused to publish the sonnet because it would have offended the white majority in the student body and the Port Jefferson community, *see* App'x 38-40, but the district court correctly determined that these "entirely conclusory" allegations are not entitled to the presumption of truth for purposes of the motion to dismiss. *Kristoffersson*, 2023 WL 6119710, at *6; *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) (noting that a court is not "required to accept as true allegations that are wholly conclusory"). Because the complaint offers no factual matter to support the assertion that the defendants discriminated against R.R. because of her viewpoint, the district court did not err by declining to credit the assertion that they did.

The district court also correctly held that *Hazelwood* rather than *Tinker* supplies the governing standard. *Hazelwood* applies when the speech at issue is part of a "school-sponsored expressive activity." *Collins*, 979 F.3d at 132 (alteration omitted) (quoting *Hazelwood*, 484 U.S. at 273). "We evaluate whether a student's speech is 'school sponsored' based on whether 'students, parents, and members of the public might reasonably perceive' the speech 'to bear the imprimatur of the school.'" *Id.* at 132-33 (alteration omitted) (quoting *Hazelwood*, 484 U.S. at 271). The district court found that *The Mast* bears "hallmarks of school sponsorship." *Kristoffersson*, 2023 WL 6119710, at *4 (quoting *Collins*, 979 F.3d at 133). These hallmarks include the following facts:

> (i) *The Mast* is the literary magazine of Earl L. Vandermeulen High School; (ii) it is composed of works submitted by the school's students; (iii) the works are selected by student editors, whose decisions are subject to review by school officials, specifically, Sefick,

8

Haruthunian, and Schmettan; (iv) it is published by the school; and (v) it is distributed to students, faculty, and members of the Port Jefferson community.

*Id*. Kristoffersson does not dispute these facts but argues that such facts do not establish that *The Mast* was a school-sponsored expressive activity such that *Hazelwood* should apply. That argument is refuted by *Hazelwood* itself, which treated a similar student publication as a school-sponsored expressive activity. *See Hazelwood*, 484 U.S. at 273. Likewise, in *R.O. ex rel. Ochshorn v. Ithaca City School District*, 645 F.3d 533 (2d Cir. 2011), we decided that a school newspaper was a school-sponsored expressive activity because—in addition to being published under the name of the school—the school provided the resources and budget for the newspaper and the newspaper was never published without the oversight of a faculty advisor. *See id.* at 541. The district court did not err in applying *Hazelwood*.[2]

Applying the *Hazelwood* standard, the district court did not err in concluding that the actions of the defendants were permissible as reasonably related to legitimate pedagogical concerns. The *Hazelwood* Court recognized that "a school must be able to take into account the emotional maturity of the intended audience in determining whether to disseminate student speech on potentially sensitive topics." *Hazelwood*, 484 U.S. at 272. Moreover, "[a] school must also retain the authority to refuse to sponsor student speech that might reasonably be perceived to … associate the school with any position other than neutrality on matters of political controversy." *Id.* The complaint acknowledges that the defendants' stated

---

[2]  The complaint further establishes that *The Mast* is school-sponsored when it alleges that the defendants refused to publish R.R.'s sonnet because they feared that the school community would be upset by the sonnet and direct its anger "at and against the Defendants' schools." App'x 39; *see Ochshorn*, 645 F.3d at 541 (noting that "members of the community at large apparently believed that [the newspaper] was school-sponsored" because they directed complaints about the newspaper's contents to the school and not to the newspaper's student managers).

reason for declining to publish R.R.'s sonnet was to avoid "creat[ing] adverse emotional reactions and strife in the Port Jefferson community, amongst students and faculty, due to the sonnet's allegedly controversial content." App'x 37-38; *see* Appellee's Br. 31-32 (arguing that the defendants did not publish the sonnet out of a "desire to avoid controversy within a school environment"). With the complaint alleging both the political sensitivity of the sonnet's subject and the defendants' stated interest in avoiding the emotional strife and controversy that would accompany its publication, we conclude that, under *Hazelwood*, school officials permissibly declined to publish the sonnet. As already discussed, the complaint offers no non-conclusory allegations that raise an inference that the defendants' justification was pretextual. The district court properly decided that the complaint failed to state a claim for violation of the First Amendment.

## C

The district court also was correct in holding that Kristoffersson's failure to state a First Amendment claim dooms her Fourteenth Amendment claims. *See African Trade & Info. Cent., Inc. v. Abromaitis*, 294 F.3d 355, 363 (2d Cir. 2002) (explaining that when the basis of an equal protection claim is a purported violation of the First Amendment, the "equal protection claim and the[] First Amendment claim coalesce"); *Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2004) ("Due to the manner in which they have cast their contentions throughout this action, the plaintiffs' [Fourteenth Amendment] selective prosecution and [First Amendment] retaliation claims 'coalesce.'"). Kristoffersson effectively conceded before the district court, and concedes again on appeal, that her equal protection claims stand or fall with her First Amendment claim.[3] That makes sense because the allegations of the complaint on which the equal protection claims depend largely reiterate the

---

[3] *See* Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss at 11, *Kristoffersson v. Port Jefferson Union Free Sch. Dist.*, No. 22-CV-01741 (E.D.N.Y. March 29, 2022), ECF No. 25 (arguing that, because Kristoffersson's First Amendment claim is viable, "the equal protection claim remains viable as well"); Appellant's Br. 23 (same).

alleged First Amendment violation. The complaint alleges, for example, that the defendants violated R.R.'s "right to free speech and expression within the school" and that "[b]y reason of [this violation], [R.R.] was deprived of … [her] right to equal protection of law." App'x 41. The complaint further alleges that the defendants violated R.R.'s right to equal protection by "prevent[ing] R.R. from advocating for the advancement of African American citizens." *Id.* at 43. Such claims are premised on the same allegations that underlie the First Amendment claim. We conclude that the district court properly dismissed Kristoffersson's Fourteenth Amendment claims as well.

**D**

Kristoffersson argues on appeal that the district court should have granted her leave to amend the complaint. The defendants correctly observe that Kristoffersson never sought leave to amend from the district court. A district court does not generally abuse its discretion in "failing to grant a request that was not made." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011). Moreover, leave to amend would have been futile in this case because Kristoffersson has not identified factual allegations she would add to the complaint to state a plausible First or Fourteenth Amendment claim. *See Noto v. 22nd Century Grp.*, 35 F.4th 95, 107 (2d Cir. 2022) ("[D]enial of leave to amend is proper 'where the request gives no clue as to how the complaint's defects would be cured.'") (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)).[4]

---

[4] The district court also did not err in denying as moot Kristoffersson's cross-motion for partial summary judgment after it granted the defendants' motion to dismiss. *See McCracken*, 91 F.4th at 609 ("[I]t was not error, but rather an exercise of efficiency, to first decide the motion for judgment on the pleadings, because if the court concluded (as it did) that the [plaintiffs'] allegations, taken as true, did not state a claim, there would be no value in assessing the evidence on a summary judgment motion. And based on our foregoing conclusion that the [plaintiffs] failed to state a claim, the district court also did not err in denying their cross-motion for summary judgment as moot.")

11

* * *

We have considered Kristoffersson's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court